ANNA BLAUL, et al. Plaintiffs in Error, vs. LILLIAN E. DAL-
TON et al. Defendants in Error.

*Opinion filed June 16, 1914—Rehearing denied October 7, 1914.*

LACHES—*when unreasonable delay will bar relief.* Equity will
assist such, only, as are diligent in asserting their rights or who
can offer a just excuse for delay in asserting them, and unreason-
able delay, not explained by any equitable circumstances, will bar
any relief.

WRIT OF ERROR to the Circuit Court of Cook county;
the Hon. JOHN P. McGOORTY, Judge, presiding.

JAMES R. WARD, for plaintiffs in error.

KRAUS, ALSCHULER & HOLDEN, for defendants in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion
of the court:

The plaintiffs in error, Anna Blaul and Louis Berthel,
two of the grandchildren of Mary M. Hoffman, deceased,
by their amended bill filed in the circuit court of Cook
county against the defendants in error, who are the devisees
and executrices of the last will of said Mary M. Hoffman,
charged that their said grandmother held the legal title to
lot 2 in John S. Bussing's subdivision of block 7 in a cer-
tain addition to Chicago, and lot 20 in block 2 in Lay's
subdivision of a block in said city, as trustee for the heirs-
at-law of her husband, George Hoffman, deceased, and
asked the court to declare a trust and vest the legal title
in said heirs-at-law, adjudging the complainants to be the
owners each of an undivided one-fifth part of said lots.
The chancellor, upon a hearing of the evidence, dismissed
the bill for want of equity. The record has been brought
to this court by writ of error.

The facts appearing on the hearing are, in substance, as
follows: George Hoffman was the owner of said lot 2 at

264 – 13

the time of his death, intestate, on July 17, 1870. He left Mary M. Hoffman, his widow, and Lillian E. Hoffman, Rosa Hoffman, Anna Hoffman, Margaret Hoffman, Julia Hoffman, Carrie Hoffman and Charles Hoffman, his children and heirs-at-law. Mary M. Hoffman was appointed administratrix of the estate. The lot was occupied as a homestead and was encumbered by a trust deed securing a note for $5000. In April, 1871, Mary M. Hoffman, as administratrix, applied to the county court for an order to sell the lot to pay debts of the estate. A decree was entered on or about April 20, 1871, in pursuance of which she sold the interest of the estate on September 1, 1871, to Martin Schmutz for $14,598. As a part of the purchase price Schmutz gave two promissory notes, secured by a purchase money mortgage or trust deed, which was recorded on September 7, 1871. Soon afterward the files, records and proceedings of the county court and the records of the recorder's office were destroyed by the great fire of October 9, 1871. On April 2, 1872, Schmutz gave two other promissory notes, dated back to the day of the sale, each for $3172.50, and executed another trust deed to take the place of the one destroyed. On November 6, 1872, Mary M. Hoffman purchased from John Atwater said lot 20 in Lay's subdivision for $2500, and removed with her children from the homestead on lot 2 to said lot 20 and occupied the same until her death. It was charged in the bill that she purchased this property out of funds in her hands as administratrix belonging to the estate but there was no evidence tending to prove the charge. On June 7, 1873, Margaret Hoffman, mother of the complainant Anna Blaul, and Julia Hoffman, mother of the plaintiff Louis Berthel, together with Carrie L. Hoffman and Rosa Hoffman, executed a deed of release, conveyance and quit-claim to their mother, Mary M. Hoffman, of all the right, title, interest, claim and demand which they had in all the real estate and the proceeds thereof, and any and all real estate purchased

with any of such proceeds, and all the personal property and estate, of any and every name and nature, part and parcel and all of the estate of the said George Hoffman, deceased. This deed was made on account of a statement made by an attorney who had acted as attorney and adviser of George Hoffman in his lifetime and of the administratrix after his death, who told the grantors that the records of the estate in the probate court and in his office had been destroyed by fire; that it was a matter of considerable expense, if not impossible, to restore them; that for the purpose of preventing their mother from being called upon to account at a later day by any husbands they might marry, it was best that she have the evidence of their being satisfied of the facts, and that the estate had been exhausted in payment of the debts which had been allowed in the probate court before the fire. The attorney testified on the hearing that there were no proceedings in the estate after the fire; that he could not remember the facts in detail but that the statement made to the children was of facts within his knowledge, and his relations to the matter were such as gave him knowledge of the facts and of the condition of the estate. The deed was made to close up the administration without any further proceedings in the county court or any effort to restore the files and records of the estate, and at that time Mary M. Hoffman, as administratrix of the estate, held the Schmutz notes and trust deed. Schmutz died about September 25, 1875, leaving a will, which was admitted to probate, and on December 12, 1876, there was due on the notes and trust deed $4195. On that day Mary M. Hoffman, as administratrix, filed her bill to foreclose the trust deed, and a decree of foreclosure was entered on October 23, 1877. On December 17, 1877, the mortgaged premises were sold by a master in chancery to Mary M. Hoffman, individually and in her own right, for $5207.92. The master reported that he received the proceeds of the sale and disposed of them by paying to the

complainant's solicitor $46.50 for costs advanced by her, retaining $94.50 for his fees and commissions, and paying to the complainant, as administratrix, $5066.92. The solicitor for Mary M. Hoffman, who was the attorney who advised the making of the quit-claim deed by the children, receipted for said sum of $5066.92 as her solicitor. The premises were not redeemed and were conveyed by the master to Mary M. Hoffman on March 18, 1879. Margaret Hoffman by her marriage became Margaret Ulrich, and died in 1897, and the complainant, her daughter, Anna Blaul, was appointed administratrix of her estate and did not inventory any interest in real estate. Julia Hoffman, (afterward Julia Berthel,) mother of the complainant Louis Berthel, died in 1884, and the bill alleged Margaret and Julia had become estranged from their mother. On the hearing the complainants offered to prove that they had no knowledge of the facts set out in their amended bill until about the time the original bill was filed; that Anna Blaul had no knowledge of her mother's claim to any real estate when she filed her petition for letters of administration, and that down to the death of Mrs. Hoffman neither of the complainants knew that either of their parents had any interest in the real estate in controversy. Mary M. Hoffman died March 28, 1912, and the original bill was filed on July 2, 1912. The quit-claim deed was recorded May 9, 1912.

By their bill the complainants appealed to a court of equity for an accounting by the estate of their deceased grandmother of the estate of their grandfather, administered forty years before the filing of the bill. To grant the relief prayed for would require the setting aside of the deed of release, conveyance and quit-claim after a period of thirty-nine years and after the death of the grantee, who knew the facts and presumably would have been able to present them to the court. No misrepresentation or fraud in connection with the execution of the deed was shown, but so far as there was any evidence it showed that

the estate was insolvent and that the statement made by the attorney was true. He testified that he knew the estate was insolvent and the records destroyed, and he advised that it was best to close up the estate by the release and conveyance. It is true that when the deed was made Mary M. Hoffman had the notes and trust deed made by Schmutz and they were made to her as administratrix, but it does not necessarily follow that the estate was not insolvent, nor that the mortgage was not required to pay debts of the estate, nor that she had not advanced an. amount equal to the mortgage for the payment of such debts. The deed was not recorded until after the death of Mary M. Hoffman, but the grantors, who knew of its execution and the representation made to procure it, lived for many years afterward. Julia Hoffman lived for eleven years after the execution of the deed and seven years after the subsequent foreclosure, and Margaret Hoffman lived twenty-five years after the execution of the deed. The bill was filed thirty-five years after the sale on the foreclosure, twenty-eight years after the death of Julia Berthel and fourteen years, after the death of Margaret Ulrich, and the matters connected with the trust deed, foreclosure and sale were all of record. Anna Blaul, one of the complainants, was administratrix of the estate of her mother and had both occasion and opportunity to investigate the facts, and as both Margaret and Julia were estranged from their mother there was no presumption of any relation between the parties which would prevent a full and free investigation. Equity will only assist such as are diligent in asserting their rights or who can offer a just excuse for delay in asserting them. (*Brink* v. *Steadman,* 70 Ill. 241.) Unreasonable delay not explained by equitable circumstances will bar any relief. (*Howe* v. *South Park Comrs.* 119 Ill. 101; *Kyle* v. *Wills,* 166 id. 501; *Wilcoxon* v. *Wilcoxon,* 230 id. 93; *Verdun* v. *Barr,* 253 id. 120.) Complainants offer no reasonable

excuse for the long delay, and the chancellor followed the just rule of courts of equity in dismissing their bill on account of their *laches.*

The decree is affirmed.                    *Decree affirmed.*