(No. 19887.—

SARA LOUISE WYLIE, Appellee, *vs.* MARIAN G. FISHER *et al.*——(CLARENCE A. BALES *et al.* Appellants.)

*Opinion filed December 20, 1929.*

CHARLES D. QUIRK, (RALPH J. BECKLER, of counsel,) for appellants.

WILLIAM GIBSON, for appellee.

Mr. JUSTICE SAMUELL delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook county partitioning six lots in the city of Evanston.

The material facts are as follows: In 1884 Isaac C. Ogden acquired a tax deed to the lots in question, and thereafter for fourteen successive years paid all taxes levied against said lots without acquiring possession thereof. In 1924 Ogden's heirs conveyed the lots to James A. Brophy, who immediately went into possession and erected fences thereon. Subsequently Brophy conveyed a one-half interest to Sara L. Wylie, the appellee, and the other one-half interest to Marian G. Fisher, both of whom continued in possession. On April 27, 1925, Sara L. Wylie filed her bill for partition against Marian G. Fisher and others, al-

leging that she and Marian G. Fisher each owned an undivided one-half interest in the six lots and praying that their title might be quieted against the other defendants. Alex G. Parrish and others, being the owners of the patent title, and the unknown heirs and unknown devisees of said persons, were made parties defendant, and all defendants were served by publication and defaulted except Marian G. Fisher, who entered her appearance and answered and consented to the decree. A decree ordering partition and quieting title was entered on June 4, 1925. The commissioners reported, and a decree confirming their report was entered on July 1, 1925. On June 2, 1928, Clarence A. Bales and others, appellants, entered their appearance and filed their intervening petition, alleging that they were the "unknown heirs" named in the original bill. Leave was granted the intervening petitioners to plead, answer or demur to the original bill, and on June 25, 1928, they filed their general demurrer to the bill, the theory being that a title by limitation under section 7 of the Limitation act, as claimed in the bill, is not effective until possession has been taken after the other requirements of the section have been complied with, and that under section 1 of the same act possession must be taken within twenty years after the last tax payment. The demurrer was overruled, and the appellants electing to stand by their demurrer the original decree was affirmed.

The sole question presented for our determination is, When must one who has paid the taxes on vacant and unoccupied property for seven consecutive years under color of title, under section 7 of the Limitation act, take possession of the property in order to perfect his title?

It is contended by appellants that possession must be taken within twenty years after the seven-year period. In support of this contention section 1 of the Limitation act is cited, which provides that no person shall commence an action for the recovery of land, nor make an entry thereon,

unless within twenty years after the right to bring such action or make such entry first accrued. It is argued that a tax title holder who has paid the taxes for seven consecutive years must take possession within twenty years after the seven-year period, otherwise his right to possession is thereby forfeited. It would appear that this precise question has never been before this court and no cases are cited which are directly in point.

The material provisions of section 7 of the act, under which appellee claims title, are as follows: "Whenever a person having color of title, made in good faith, to vacant and unoccupied land, shall pay all taxes legally assessed thereon for seven successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land, to the extent and according to the purport of his or her paper title." ·This court has held repeatedly that in order to perfect title under this section the owner of the color of title must take possession after the seven-year payment of taxes. (*Wood* v. *Glos,* 257 Ill. 125; *Gage* v. *Smith,* 142 id. 191.) In the *Gage case* we said: "It is unnecessary at this late day to enter into a discussion of section 7 of the present Limitation act. Whatever may be the literal import of the words used in the section, yet it is only as a limitation law that it can constitutionally become operative, and statutes of limitation work upon the basis of a possession. When the color of title made in good faith and the payment of taxes for seven successive years on vacant and unoccupied land have become united with the actual possession of the holder of such color of title, then, and not until then, the bar of said section of the statute becomes complete, operative and available against the holders of the true title. This has long been the law of this State and a settled rule of property."

No case can be cited which arbitrarily fixes the period within which possession must be acquired, and this court would be doing violence to the limitation statutes of this

State if it attempted to do so. We think the appellants have misconceived the purpose not only of section 1 of the act but of the whole theory of limitation acts as applied to real estate. The purpose of such act is to settle titles. It is important that stability of real estate titles be promoted, and this, we think, was the purpose of the legislature in placing upon our statute books the laws relating to the limitation of actions. If the owner of the record title to a tract of land permits the occupation of his land by another for a period of twenty years and the person so occupying the land claims to own the same during that period, the owner of the record title is barred, under section 1, from bringing any action to recover possession of the land. It is the possession of the adverse claimant that bars the true owner, and possession means actual occupation. On the other hand, section 7 contemplates land which is not in the possession of anyone. The descriptive words, "vacant and unoccupied land," used in this section, show the purpose of the legislature to establish a limitation as to land not in the possession of anyone, in favor of the person who has paid the taxes thereon for a sufficient period to indicate that the true owner has abandoned his rights. This period the legislature fixed at seven years. The owner of real estate is presumed to know that if he fails to pay the taxes thereon the property will be sold. He is chargeable with notice of any tax sales and deeds made in pursuance thereof, and is allowed a reasonable time, fixed by the legislature at seven years, in which to come in and assert his rights. If he fails to do so and the holder of the tax title acquires possession, the record title owner is thereafter barred from asserting his claim. To hold otherwise would defeat the very purpose of the act, since it would cause uncertainty and tend to unsettle rather than stabilize titles.

Appellants, and those through whom they claim, asserted no claim to the real estate in question for about

forty-four years. They allowed the holder of the tax title to pay the taxes for more than seven years. They have not been in possession since 1884, but they now contend that their title is superior to that of appellee, who is in possession after seven consecutive years of tax payments, because she did not take possession within twenty years after the last tax payment. This court said in *McCagg* v. *Heacock,* 42 Ill. 153: "We have understood the rule to be that the statute could be used as a shield to protect a party in possession; that when one had acquired color of title in good faith to vacant and unoccupied lands and had paid the taxes thereon for seven successive years from the time this color of title was acquired, and had afterwards got into possession of the land under such title, no title whatever could prevail against him,—and this is the wide-spread understanding of community. Should the holder of the paramount title get into possession before the party who has color and who has paid the taxes for seven successive years, such possession is protected. Such is understood to be the effect and operation of the second section, as was said by this court in *Paullin* v. *Hale,* decided at April Term, 1866. (40 Ill. 274.) It was there declared as the settled law of this court that until the owner of the color of title has united actual possession to the color and to the payment of taxes he is not in a position to invoke the aid of the second section, for the reason that such enactment cannot become constitutionally operative until the person invoking its aid has acquired actual possession. Then for the first time it properly becomes a limitation law. The law does not confer title on such a party but clothes him merely with defensive armor, which becomes invulnerable if possession be taken."

If appellants had acquired possession of the lots before Brophy their possession would have been protected. Since they did not, and since Brophy went into possession after seven consecutive years of tax payments had been com-

pleted, the bar of section 7 thereby became complete as against appellants, and they have now no right to assert any claim in the real estate in question.

The decree of the superior court is therefore affirmed.

*Decree affirmed.*