(No. 34429.—

JOHN PYLE, Appellant, *vs.* BESSIE FERRELL *et al.,* Appellees.

*Opinion filed January 24, 1958.*

House and Hershey, JJ., specially concurring.

John C. Mitchell, of Golconda, and William E. Aulgur, of East Alton, for appellant.

Mr. Justice Daily delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Hardin County which dismissed for want of equity a complaint whereby the appellant, John Pyle, sought to quiet title to the mineral estate in 80 acres of land and to remove as clouds upon his title a tax deed conveying such estate and certain leases made by the holder of the tax deed.

William Pyle, the father of appellant, acquired title to the land in question by deeds executed in 1886 and 1903. Proof was made that he paid all taxes assessed for the years 1903 through 1911, and both his son and neighbors testified he was in possession and farmed the land until his death in 1931. By the terms of William Pyle's will, which was duly probated, the mineral estate in the 80 acres was severed from the surface estate and title to the former became completely vested in appellant when his mother's life tenancy was terminated by death in 1932. He thus became seized of a separate estate in the minerals with all the rights of an owner of land, and subject to all the laws of possession,

550

conveyance and taxation. (*Miller* v. *Ridgley*, 2 Ill.2d 223; *Deverick* v. *Bline*, 404 Ill. 302; 26 I.L.P., Mining, Oil & Gas, sec. 11.) Such estate could not be lost by mere non-user or abandonment of the mineral interest, (*Uphoff* v. *Trustees of Tufts College*, 351 Ill. 146; 26 I.L.P., Mining, Oil & Gas, sec. 49,) but could be lost by adverse possession, (*Kinder* v. *La Salle County Carbon Coal Co.* 301 Ill. 362; *Jilek* v. *Chicago, Wilmington & Franklin Coal Co.* 382 Ill. 241,) and is also considered to be "land," within the meaning of section 7 of the Limitations Act, (Ill. Rev. Stat. 1953, chap. 83, par. 7,) which may be lost to one who gains title by the payment of taxes for seven years under color of title. *Catlin Coal Co.* v. *Lloyd*, 176 Ill. 275.

Appellant was a resident of California when his parents died, having moved there in 1917, and he testified that he first learned of his mineral estate at the time of his mother's death in 1932. He continued his residence in California until 1946, in which year he moved to Galatia, Illinois, described as being 40 miles from the county seat where the tax and property records concerning his mineral estate were kept, and 35 miles from the land itself. By appellant's own admission, he did not at any time between 1932 and 1954 either visit the land or concern himself with the use of his mineral estate. Neither did he pay taxes at any time or attempt to learn of their status. In 1954 appellant's interest in his mineral estate was aroused by a geologist who approached him for a lease and who gave him the information that the estate had been sold to Haggie Ferrell for delinquent taxes. Thereafter appellant filed this proceeding to quiet title and although his complaint offers to do equity, there is no showing that he ever made a tender of the back taxes to Ferrell, or negotiated with him. With regard to taxes on the mineral estate, which were assessed separately from those of the surface estate, appellant testified he had never received notice of assessments and de-

nied having received any notice relating to the tax sale proceedings.

Various tax records introduced in evidence, including a notice of sale, a certificate of purchase, an affidavit for deed, and a tax deed, establish that appellant's mineral estate was sold in 1936 for delinquent taxes of 1935. The purchaser, Haggie Ferrell, received a tax deed in 1938 when the estate was not redeemed. Ferrell paid the taxes assessed for 1936 and 1937 and, after receiving his tax deed, paid the taxes for and including all years up to 1955. In total, therefore, he paid taxes for 20 consecutive years with 18 of the payments being under the color of title afforded by his tax deed. Whether Ferrell took the possession of the mineral estate necessary to perfect a title under section 7 of the Limitations Act, (see: *Robertson* v. *Bachmann,* 352 Ill. 291; *Wylie* v. *Fisher,* 337 Ill. 488; *Travers* v. *McElvain,* 200 Ill. 377; *Catlin Coal Co.* v. *Lloyd,* 176 Ill. 275,) remains doubtful from the evidence in the record. However, in the view we take, a decision on that issue is unnecessary to this opinion. During 1951 Ferrell caused the title to the mineral estate to be placed in joint tenancy with his wife and title was so held when this action was commenced in 1954. Ferrell died before the cause was heard, thus it is his widow, Bessie Ferrell, who is the principal appellee in this court. The complaint alleges that Otis Lamar, Aluminum Corporation of America and the Shell Oil Company are third parties claiming some interest in the mineral estate by virtue of leases executed by Ferrell. The Shell Company filed an answer admitting its claim as the assignee of a recorded oil-and-gas lease executed by Ferrell on March 13, 1953, but did not participate further in the cause; Lamar and the Aluminum Corporation filed no answers and were defaulted.

Appellant's complaint for equitable relief was predicated on the theory that the tax deed to the mineral estate was

void for various incidents of nonconformance with the statutory requirements for the issuance of a valid tax deed. Appellee Ferrell denied the invalidity of the deed and, in addition, affirmatively defended on the ground of *laches,* and upon title allegedly perfected under section 7 of the Limitations Act, (Ill. Rev. Stat. 1953, chap. 83, par. 7,) by virtue of seven years payment of taxes, with color of title to vacant lands. The chancellor, without passing upon the other issues, dismissed the complaint for want of equity on the ground that appellant had been guilty of *laches.* Although appellant has argued to the contrary, it is our opinion the decree must be sustained on that ground.

*Laches,* or the doctrine of stale demand, as it is sometimes termed, is a defense peculiar to equity which is bottomed on the reluctance to aid one who has knowingly slept upon his rights and acquiesced for a great length of time, (19 Am. Jur., Equity, sec. 489,) and its existence depends on whether, under all circumstances of a particular case, a plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did. (*McCartney* v. *McCartney,* 8 Ill.2d 494.) Although *laches* is defined by one authority as such delay in enforcing one's rights as will work to the disadvantage of another, (30 C.J.S., Equity, sec. 112,) it is, unlike limitations, not a mere matter of time but principally a question of the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property and parties, and where there is such a change as to make it inequitable to grant relief, it will be refused. (*McKey* v. *McKean,* 384 Ill. 112.) *Laches* is, therefore, such neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity. (*Curtis* v. *Curtis,* 398 Ill. 442; *Gaffney* v. *Harmon,* 405 Ill. 273; *Carlson* v. *Carlson,* 409 Ill. 167.) When an owner brings an action in equity

to recover land as against the holder of the tax title, the doctrine of *laches* will apply if the conditions for its application are present. 85 C.J.S., Taxation, sec. 985; cf. *Oakley* v. *Hurlbut,* 100 Ill. 204.

What facts will combine to constitute *laches* is to be determined in the light of the circumstances of each case; however, it is pointed out in 19 Am. Jur., Equity, sec. 498, that a suit is held to be barred on the ground of *laches* or stale demand "where and only where" the following facts are disclosed: (1) Conduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit, and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is held not to be barred. The facts present in this case meet these requirements and demonstrate conclusively that it would be most inequitable to grant relief to appellant, considering the long delay in bringing suit, the nature of the property interest, and all that he permitted to take place with reference to his mineral estate from the time he became seized of such interest until the time he commenced this suit.

Courts treating upon the doctrine of *laches* have long recognized that more than ordinary promptness is required of a claimant if the property involved is of a speculative or fluctuating character, (*Simpson* v. *Manson,* 345 Ill. 543; *Carlock* v. *Carlock,* 249 Ill. 330,) and, because oil and mining property is of such a specially precarious nature and is exposed to the utmost fluctuations in value, have held there is no class of property in which *laches* is more relentlessly enforced. (*Twin-Lick Oil Co.* v. *Marbury,* 91 U.S. 587, 23 L. ed. 328; *Sturm* v. *Wiess,* 273 Fed. 457; *Medallion*

*Oil Co.* v. *Hinckley,* 92 F.2d 155.) Here we are dealing solely with a mineral estate which had been severed from the surface, and the facts show appellant became aware of his interest, and of its nature, in 1932. Haggie Ferrell, from whom appellee Ferrell derived her title, purchased the appellant's mineral estate for delinquent taxes in 1936, received a tax deed in 1938, paid taxes for 20 consecutive years, caused a joint interest in the mineral estate to be conveyed to his wife in 1951 and executed an oil-and-gas lease covering such estate in 1953, all without challenge from the appellant. These matters were all of public record, and although appellant claims not to have had notice of any of these matters adverse to his ownership, such public records served as constructive notice to him where, as here, the adverse claimant was not guilty of any affirmative act of deception to prevent suspicion and inquiry. (See: *Potts* v. *Alexander,* 118 Fed. 885; *Briggs* v. *Buzzell,* 164 Minn. 116, 204 N.W. 548.) The test is not what the appellant knows, but what he might have known by the use of the means of information within his reach with the vigilance the law requires of him. *Neagle* v. *McMullen,* 334 Ill. 168; *Blaul* v. *Dalton,* 264 Ill. 193.

During the same period of time that Ferrell was establishing and exercising his adverse claim, appellant made no inspection of his property or the property records, did not at any time pay taxes or make inquiry with regard to the tax status, and conducted himself generally in such a manner as to indicate acquiescence both in Ferrell's title and in his subsequent conduct of conveying and leasing the mineral interest. This negligence and indifference on the part of appellant continued even during the period of eight years which elapsed after his return to Illinois in 1946 and, considering his proximity to both the land and the public records concerning it, occurred at a time when ordinary prudence would suggest he make inquiry into the status of his interest. Had he done so he would have learned his min-

eral estate had been sold for delinquent taxes, and would have discovered the alleged deficiencies in the sale proceedings of which he now complains some 16 years after the tax deed was issued and recorded. Appellant testified he was unaware the minerals were assessed separately from the surface. By weight of authority, however, ignorance of the law or legal rights will not excuse delay in bringing suit. *LeGout* v. *LeVieux*, 338 Ill. 46; *Breit* v. *Yeaton*, 101 Ill. 242; 30 C.J.S., Equity, sec. 128f.

In addition to the neglect and delay which attended the appellant's prosecution of this action, we may consider that a party is guilty of *laches* which ordinarily bars the enforcement of his right where he remains passive while an adverse claimant incurs risk, enters into obligations, or makes expenditures for improvements or taxes. (See: 30 C.J.S., Equity, sec. 118.) Here it is undisputed that Ferrell, after waiting 15 years for appellant to redeem his land or to assert himself against the tax title, incurred the risk and obligations attendant to a lease of the mineral estate for oil and gas, and that he expended money for the taxes on the premises for a period of 20 consecutive years. We may consider too that the rule of *laches* is particularly applicable where the difficulty of doing entire justice arises through the death of parties to the transaction complained of. (*Neagle* v. *McMullen*, 334 Ill. 168; *Carlock* v. *Carlock*, 249 Ill. 330.) Ferrell, the grantee of the tax deed appellant seeks to cancel, died before the cause could be heard and thus important evidence on the issue of possession under the tax deed was lost. While Ferrell's testimony might not have been conclusive, its loss, after the long delay of appellant in bringing his suit, is but another factor pointing up the inequity of granting relief in this case.

Predicated on the circumstance that there is here involved a mineral estate, the character of which necessitated a greater degree of diligence and promptness than would be otherwise required, it is our opinion that the circuit

court of Hardin County properly found appellant guilty of *laches*. Our conclusion, however, must be considered as being the result of the circumstances peculiar to this case, and not to represent a view that *laches* of an owner will in all instances serve as a defense to those claiming under tax deeds. Accordingly, the decree dismissing the complaint for want of equity is affirmed.

*Decree affirmed.*

Mr. JUSTICE HOUSE, specially concurring:

I agree with the conclusion reached by the majority but in my view it should be grounded upon section 7 of the Limitations Act, (Ill. Rev. Stat. 1955, chap. 83, par. 7,) rather than *laches*.

Section 7 is practically identical with the original enactment approved March 2, 1839. It provides that one having color of title, made in good faith, to vacant and unoccupied land, who pays all taxes legally assessed for seven consecutive years, shall be deemed and adjudicated to be the legal owner, to the extent and according to the purport of his paper title. While nothing is said about the necessity of taking possession, this court over the years has held that in order to bar the rights of the owner of the paramount title the holder of color of title must take possession after the expiration of the seven-year period. *Paullin* v. *Hale,* 40 Ill. 274; *Travers* v. *McElvain,* 200 Ill. 377; *Gage* v. *Smith,* 142 Ill. 191; *Wood* v. *Glos,* 257 Ill. 125; *Wylie* v. *Fisher,* 337 Ill. 488; *Robertson* v. *Bachmann,* 352 Ill. 291.

The possession rule poses a serious problem when applied to severed minerals. It is the apparent weight of authority that solid minerals must actually be removed from the ground and that fugacious minerals be produced in order to reduce such minerals to possession. (See Summers, The Law of Oil and Gas, Vol. 1A, sec. 138, pp. 307, 315-320.) Therefore, in order to acquire possession of minerals,

if the above rule is made applicable to severed minerals, a mineral holder would have to not only mine or drill, but would have to find minerals.

It is unrealistic to say that it was the legislative intent to impose such an expensive and harsh burden. Much of the language of the dissent of Mr. Justice Hershey in the case of *Pickens* v. *Adams,* 7 Ill.2d 283, while dealing with a different section of the statute, is applicable to this problem. I am heartily in accord with his views therein expressed.

An examination of the history of the possession rule reveals that it stems from the early case of *Newland* v. *Marsh,* 19 Ill. 376. The validity of the section was upheld on the ground that it was a limitation law. It is noteworthy, however, that, although later cases inferred that the possession rule was contained in *Newland* v. *Marsh,* 19 Ill. 376, such is not the case. There the court said, at page 385: "It [the statute] does not commence running only from possession taken of the land, but from the time of the concurrence of the two things—the color of title and payment of taxes—and has performed its office, when the color of title and payment of taxes have gone together for the period of limitation; and it is the same to the party availing himself of the bar whether he is sued whilst in or out of possession."

Notwithstanding the foregoing quoted language, the court, in *Paullin* v. *Hale,* 40 Ill. 274, at page 277, said: "Ever since the case of *Newland* v. *Marsh,* 19 Ill. 376, it has been the settled law of this court, that this second section [now section 7] cannot be used as a sword, unaccompanied by possession, and to that rule we intend to adhere." It was recognized by the court in *McCagg* v. *Heacock,* 42 Ill. 153, that *Newland* v. *Marsh* did not adopt the possession rule, but the *McCagg case* said that the question of whether the holder of color of title could interpose the

statute if out of possession was not before the court in *Newland* v. *Marsh* and therefore was merely *dictum* on the point.

Two things appear to have been overlooked over the years by the court, first, all of the early cases involved ejectment actions, which require possession; second, no differentiation has been made between cases where color of title was created pursuant to a judgment or decree of a court of record (such as a tax deed), and those cases where it was derived from a stranger. I feel that the whole question of the possession rule should be carefully re-examined and reappraised in its application to severed minerals, to surface, and to surface with unsevered minerals, if and when properly presented.

In the case now before us, I would hold that the possession rule does not apply. Tax deeds may be held invalid by a court upon various grounds within the seven-year period but, after the expiration of that period, section 7 should be held to be a complete bar to questions in regard to the tax sale. The purchaser should, with color of title through a tax deed and payment of taxes for seven years, whether in or out of possession, be granted relief from stale claims arising more than seven years later.

The merchantability of titles remains unsettled for years because of the line of possession decisions of this court under section 7. The title to great areas of severed minerals in this State is in question. If each case must be decided on the grounds of *laches,* then the instability of title continues since no one is in a position to determine if a claim is barred on the ground of *laches* in any given case.

Our natural reluctance to overrule cases long recognized as the law should not deter us where it is apparent that they are wrong as applied to the circumstances of the case before us. To hold as suggested herein would do much to stabilize tax and other defective mineral titles held under color of title by a deed issued pursuant to a judgment or

a decree of a court of record. I would overrule the line of cases earlier referred to when applied to the circumstances here presented. This approach seems much less strained than the decision of the majority which is based on *laches*.

Mr. JUSTICE HERSHEY joins in this special concurrence.