The First National Bank of Mt. Vernon, Illinois, Plaintiff-Appellee, v. The Conference Claimants Society of the Southern Illinois Conference of the Methodist Church, a Corporation, Defendant-Appellant, Ace Summers, et al., and Paul Wielt, d/b/a G. F. Wielt Company, Defendants-Appellees.

Gen. No. 68–40.

Fifth District.

May 29, 1969.

William C. Stephens, Murray & Stephens, of Centralia, for appellant.

Donald G. Musick, Kirk & Musick, of Mt. Vernon, for appellee.

EBERSPACHER, J.

This is a suit to have an agreement for warranty deed construed as a mortgage and to set aside a forfeiture of

the agreement which had been declared by the seller. The Circuit Court of Jefferson County, Illinois, found the agreement to be an equitable mortgage and ordered a sale of the original purchaser's interest in the real estate subject to the mortgage. The defendant, contract seller, has appealed from that decree.

The facts as may be gleaned from the record are as follows:

Sometime in 1956, Jennie Hinman, being then the owner of a piece of real estate known as 3 Hinman Place, Mt. Vernon, Illinois, entered into a contract for deed with Gale and Nelda Mae Blanton to sell it to them for a total consideration of $11,000, payable $1,000 down, interest quarterly for two years, and then the balance. When the time came to pay the balance in 1958, the Blantons were unable to complete the contract. Arrangements were made with the defendant and appellant herein, Conference Claimants Society of the Southern Illinois Conference of the Methodist Church (hereinafter referred to as the Society), whereby the Society paid off Mrs. Hinman and received a deed to the real estate and then entered into an agreement for warranty deed, dated August 5, 1958, agreeing to sell the real estate to the Blantons for a consideration of $8,000 payable in monthly installments of $70 each for eighteen months and then $100 per month until the entire amount, with interest, was paid. Blanton received no money from the Society. The Blantons agreed to pay the taxes and insurance, which was to be issued in the name of the Society as owner but with the Blantons as additional insured as their interest might appear. The contract further provided that in case of failure of the Blantons to make the payments, or perform any of the covenants required of them, the Society could at its option terminate the contract, retaining any payments made as liquidated damages, and re-enter and take possession of the real estate. The contract

contained an additional provision, that the Blantons would pay to the Society all court costs, reasonable attorneys' fees, Master's fees, or other expenses which may be incurred by the Society in enforcing compliance with the terms of the agreement or for the foreclosure and sale of the real estate. The contract recited that time was of the essence of the contract, and that it was binding upon the heirs, executors, administrators and assigns of the parties. On August 19, 1958, the attorney that prepared the contract for deed gave the Society a written opinion, stating that fee simple title was vested in the Society, subject among other things to an unrecorded contract for deed in favor of the Blantons.

After entering into the agreement with the Society, Gale Blanton again experienced financial trouble, and borrowed $2,850 from the First National Bank of Mt. Vernon in May, 1959, and another $800 in October, 1959. These notes were renewed from time to time. On March 21, 1960, Ace Summers obtained a judgment for $6,400 against Gale Blanton, and on June 10, 1960, filed an "Affidavit Concerning Claim for Lien" with the County Clerk. The Bank, meanwhile, called on the Blantons for collateral for its notes, and on June 20, 1962, Gale and Nelda Blanton executed an assignment for all of their interest "in a contract for deed dated the 5th day of August, 1958, from Conference Claimants Society . . . in favor of Thomas Gale Blanton and Nelda Mae Blanton," to secure the payment of the $2,850 note. On the same day Gale Blanton made a similar collateral assignment to secure the payment of a renewal of the $800 note, now increased to $913.60 by the addition of interest on the two notes. On July 25, 1960, Gale Blanton made another assignment of his interest in the contract to Ace Summers, which assignment recited the prior assignments to the Bank and stated that it was subject to them. A copy of this assignment to Summers was delivered to the bank a few days later.

479

Blanton defaulted in his payments under the contract, and also failed to pay the taxes and insurance. Sometime between September, 1960, and the summer of 1961 they moved out of the house. In the meantime the Society contacted the President of the plaintiff Bank, informing him of the default by the Blantons, and asked if the Bank was interested in taking over the contract, paying the taxes and insurance and bringing it to a current status. He stated that the Bank did not want to take over the contract, although it knew it was in default. With the contract nearly a year in default, the Society prepared a formal written notice of forfeiture of the contract with the Blantons, which notice was served upon both the Blantons and the Bank on June 13, 1961. The Society then negotiated with Ace Summers to sell him the property, and on January 16, 1962 entered into an Agreement whereby it agreed to convey the real estate to Ace and Amy Summers, free and clear of all encumbrances.

On January 3, 1963, about eighteen months after the written notice of forfeiture, the Bank filed a complaint against the Blantons, the Conference Claimants Society, the Summers and the Wielts (who had filed a mechanic's lien claim in October, 1960), alleging that the contract for deed dated August 5, 1958 between the Society and the Blantons was in fact a mortgage which could not be terminated except by foreclosure in a court proceedings and that the Bank was the holder of the equity of redemption. The plaintiff made no offer to fulfill the terms of the contract. The complaint asked that the Court order an accounting of the amounts due the parties, determine the priorities one to another, and that defendants or some one or more of them be decreed to pay plaintiff and other parties who might be determined to be entitled to payment, the amounts found due; and that in default of such payments the property be sold to satisfy the sums due the parties.

480

The Society answered the complaint, denying that the contract was a mortgage, denying that the forfeiture was ineffective, and as an affirmative defense alleging that the Bank was guilty of laches in failing to raise the question until after the Society had changed its position, so that the Bank was barred from bringing an action to reform the contract. The Summers filed a similar answer. The Blantons and Wielts failed to answer and were defaulted.

The Court found the agreement for deed between the Society and the Blantons was in fact a mortgage, that title to the premises was in the Blantons, and that the Blantons owed $8,367.45 to the Society, $3,766.90 to the Bank and $1,713.18 to Ace Summers. The court ordered the Blantons to pay the sums owed by July 15, 1964, and that if they should fail to do so, the property be sold by the sheriff subject to the mortgage of the Society.

The defendant, Society, the sole appellant herein, asserts that the trial court erred in its finding that the contract for deed was in fact an equitable mortgage and that the plaintiff was not guilty of laches.

Turning first to the principal issue, i. e., the construction of the contract for deed, both of the parties have filed well documented briefs in support of their respective positions. The resolution of the issue does not involve the weighing of the evidence, which is virtually undisputed, but the application of the law as it would apply to the bizarre facts that are presented herein. However, in the view we take, a decision on that issue is unnecessary to this opinion.

There is no dispute that written notice of forfeiture of the contract for deed was served upon the plaintiff eighteen months before the plaintiff filed their complaint. It is also clear that sometime prior to the forfeiture the plaintiff was afforded the opportunity of assuming the contract. Six months after forfeiting the contract the

defendant entered into a new contract for deed with a third party, obligating itself, upon the payments being made, to convey "in fee simple clear of all incumbrances whatever." Then for a period of one year, January 16, 1962, until January 13, 1963, the third party made substantial expenditures which included payment of taxes, improvement to the property and payments to the defendant pursuant to the terms of that contract. There is no evidence that the plaintiff sought to assert their alleged interest as to any party until the filing of their complaint.

It is our opinion that the circumstances demonstrate that the plaintiff is guilty of laches.

As stated by our Supreme Court in Pyle v. Ferrell, 12 Ill2d 547, 553, 147 NE2d 341 (1958), a suit is held to be barred on the ground of laches or stale demand where the following facts are disclosed:

> "(1) Conduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy;
>
> "(2) Delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit;
>
> "(3) Lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit, and
>
> "(4) Injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is held not to be barred."

The facts and circumstances present in this case meet these requirements and demonstrate conclusively that it would be most inequitable to affirm the relief granted to the plaintiff in the trial court considering the delay in bringing suit and particularly the prejudice that would be

caused to the defendants and the third party who had been permitted to substantially change their position by the inaction of the plaintiff.

Accordingly, the Decree entered by the Circuit Court of Jefferson County, Illinois is reversed and the cause dismissed at plaintiff's costs with prejudice.

GOLDENHERSH and MORAN, JJ., concur.