**2025 IL 131480**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 131480)

TONY McCOMBIE *et al.*, Movants, v. THE ILLINOIS STATE BOARD OF ELECTIONS *et al.*, Respondents.

*Opinion filed April 9, 2025.*

*PER CURIAM*
  Justice Overstreet dissented, with opinion.
  Justice Holder White took no part in the decision.

## OPINION

¶ 1    This cause comes before the court on the motion of Tony McCombie *et al.* for leave to file a complaint for declaratory judgment and injunctive relief as an original action in this court under article IV, section 3, of the Illinois Constitution of 1970. Plaintiffs seek to challenge the legislative redistricting plan for election of members of the Illinois General Assembly signed into law on September 24, 2021 (2021 Enacted Plan). See Pub. Act 102-663, § 5 (eff. Sept. 24, 2021) (amending 10 ILCS

92/5, 20 and adding 10 ILCS 92/11). This court allowed the motion of the Illinois Speaker of the House, Emanuel Christopher Welch, and the Illinois Senate President, Don Harmon, to intervene as defendants in this matter. The parties have filed briefs as directed by the court on the issue of whether plaintiffs' motion for leave to file an original action pursuant to Illinois Supreme Court Rule 382 (eff. July 1, 2017) is timely.

¶ 2        Plaintiffs seek to invoke this court's original jurisdiction and assert that the 2021 Enacted Plan violates the requirement of article IV, section 3(a), of the Illinois Constitution that legislative and representative districts "shall be compact, contiguous and substantially equal in population" (Ill. Const. 1970, art. IV, § 3(a)). Defendants argue that the motion is untimely and barred by the doctrine of *laches*.

¶ 3        Article IV, section 3, contains no specific time limitation period for filing an action, and Rule 382, which governs the procedure for such original actions in this court, does not contain a time limitation. This court has never applied the five-year catchall statute of limitations found in section 13-205 of the Code of Civil Procedure (735 ILCS 5/13-205 (West 2022)) to claims invoking this court's original and exclusive jurisdiction under article IV, section 3(b).

¶ 4        The lack of a specific time limitation period, however, does not mean that plaintiffs' motion was timely. The issue before us is whether plaintiffs' motion is barred by the equitable doctrine of *laches* because it was filed more than three years, and two election cycles, after the redistricting map was enacted in 2021. "*Laches* is an equitable defense asserted against a party 'who has knowingly slept upon his rights and acquiesced for a great length of time ***.' " *Tillman v. Pritzker*, 2021 IL 126387, ¶ 25 (quoting *Pyle v. Ferrell*, 12 Ill. 2d 547, 552 (1958)). Whereas a statute of limitations bars a claim based solely on the expiration of a set period of time, "*laches* turns on 'the inequity of permitting the claim to be enforced' " based on a "change in the condition or relation of the property and parties." *Id.* (quoting *Pyle*, 12 Ill. 2d at 552). *Laches* has two fundamental elements: (1) lack of due diligence by the party asserting the claim and (2) prejudice to the opposing party. *Id.*

¶ 5        Plaintiffs argue that their motion seeking leave to challenge the 2021 Enacted Plan under article IV, section 3, of the Illinois Constitution is timely, but they rely on federal and out-of-state case law for that proposition. These cases do not inform our decision on whether plaintiffs' motion in this court is timely. Plaintiffs also fail

to discuss or even recognize the expeditious filing and disposition of every previous redistricting case considered by this court since the adoption of the 1970 Constitution. See *People ex rel. Scott v. Grivetti*, 50 Ill. 2d 156 (1971) (*per curiam*) (plaintiffs sought to invoke this court's original and exclusive jurisdiction on October 19, two months after the filing of the redistricting plan on August 10, 1971); *Schrage v. State Board of Elections*, 88 Ill. 2d 87 (1981) (plaintiffs sought to invoke this court's original and exclusive jurisdiction on October 19, 14 days after the filing of the redistricting plan on October 5, 1981); *People ex rel. Burris v. Ryan*, 147 Ill. 2d 270 (1991) (plaintiffs sought to invoke this court's original and exclusive jurisdiction on October 11, seven days after the filing of the redistricting plan on October 4, 1991); *Cole-Randazzo v. Ryan*, 198 Ill. 2d 233 (2001) (plaintiffs sought to invoke this court's original and exclusive jurisdiction on September 27, two days after the filing of redistricting plan on September 25, 2001). Notably, plaintiffs do not even acknowledge this court's most recent redistricting case from 2012, when this court similarly ordered the parties to brief the issue of timeliness of the challenge to the legislative map and then denied the plaintiffs leave to file their complaint. See *Cross v. Illinois State Board of Elections*, No. 113840 (Ill. June 7, 2012) (plaintiffs denied leave to file complaint after they waited eight months to seek leave to challenge the redistricting plan, from June 3, 2011, to February 8, 2012).

¶ 6   Plaintiffs' timing in filing the instant motion shows a lack of due diligence. The current redistricting map was signed into law on September 24, 2021. On December 30, 2021, a three-judge federal district court panel in three consolidated cases rejected challenges that the map violated the Voting Rights Act of 1965 (52 U.S.C. § 10301 *et seq.* (2018)) and the equal protection clause (U.S. Const., amend. XIV) by engaging in racial gerrymandering. See *McConchie v. Scholz*, 577 F. Supp. 3d 842, 885 (N.D. Ill. 2021). No appeal was taken from that decision. Plaintiffs' instant motion for leave to file in this court states that they are challenging the constitutionality of the 2021 Enacted Plan because it features numerous districts that were gerrymandered for strictly partisan purposes and that it violates the requirements of article IV, section 3(a), that legislative and representative districts are compact. Plaintiffs could have brought this argument years ago. Their claim that waiting multiple election cycles is necessary to reveal the effects of redistricting is unpersuasive.

¶ 7 Plaintiffs' approach would also be prejudicial and create uncertainty for voters and officeholders alike, now and in the future, as to whether any redistricting plan in Illinois is ever final. Plaintiffs' motion for leave to file was brought more than three years and four months after the adoption of the current map. This delay is 32 months more than the delay in the 2012 challenge, which this court denied in *Cross*. We are closer to the next decennial census than the last. Plaintiffs seek to use data that may now be stale, which could be prejudicial to the parties as well as the public.

¶ 8                                    CONCLUSION

¶ 9 For these reasons, plaintiffs' motion for leave to file a complaint for declaratory and injunctive relief pursuant to Rule 382 is untimely and barred by *laches*.

¶ 10 Motion for leave denied.

¶ 11 JUSTICE OVERSTREET, dissenting:

¶ 12 I respectfully dissent from the majority's decision to deny plaintiffs' motion for leave to file a complaint for declaratory and injunctive relief. This court is the sole means of ensuring that legislative redistricting plans enacted pursuant to article IV, section 3, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 3) conform with the requirements set forth by the Illinois Constitution and this court. Yet, the majority refuses to consider plaintiffs' well-pled complaint on its merits, citing the equitable doctrine of *laches*. I disagree that *laches* applies to bar the claims set forth in the proposed complaint and would allow plaintiffs' motion for leave to file same, thus addressing the complaint on its merits as our constitution requires. See *id.*

¶ 13                    A. The Majority Invited Intervenors to
                            Raise the *Laches* Defense

¶ 14 As a preliminary matter, I disagree with the majority's decision to raise the issue of the timeliness of plaintiffs' complaint *sua sponte*. Although issues of timeliness are raised via affirmative defenses that are defendants' burden to plead and prove (*Ruddock v. First National Bank of Lake Forest*, 201 Ill. App. 3d 907, 918 (1990)),

the majority's *sua sponte* briefing order required plaintiffs to file an opening brief on timeliness despite the fact that no party had entered an appearance or objected to plaintiff's motion for leave to file the complaint. As a result of this *sua sponte* briefing order, plaintiffs were required to anticipate and respond to an unspecified and hypothetical affirmative defense, as the briefing order did not indicate whether the court was concerned about an applicable statute of limitations or some other issue related to the timing of the motion for leave to file the complaint.

¶ 15    The irregularity of the *sua sponte* briefing order is further illustrated by defendants' response to the order, in which they filed a statement that they were taking no position on the issue of timeliness, thus declining to raise any affirmative defense to the motion despite the implication of the order, which invited defendants to do so. On the deadline the *sua sponte* briefing order set for defendants to file a brief on timeliness, intervenors sought to intervene and raise the *laches* defense. Considering the majority's position that there is no applicable statute of limitations and defendants' statement that they take no position on timeliness, the effect of this procedure was to invite intervenors to assert a *laches* defense prior to the court allowing the motion for leave to file the complaint, despite the fact that the motion for leave was presented to the court unopposed.

¶ 16    While the majority likens this procedure to that employed by the court in 2012 in *Cross v. Illinois State Board of Elections*, No. 113840 (Ill. June 7, 2012) (*supra* ¶ 5), an examination of the docket sheet for that case reveals crucial differences. In *Cross*, the named defendants, the Illinois State Board of Elections and its members, raised a *laches* defense in a timely filed response to the motion for leave to file the complaint. After the defendants asserted the defense of *laches* in response to the motion for leave, the court appropriately ordered a briefing schedule in which the plaintiffs were afforded the opportunity to answer the affirmative defense that the defendants properly raised. Thus, when the court entered its order denying leave to file the complaint in *Cross*, it was adjudicating an appropriately asserted and fully briefed affirmative defense to the proposed complaint.

¶ 17    Here, in contrast to *Cross*, plaintiffs' motion for leave to file the complaint was unopposed. After the time for responding to the motion had passed and without any objection having been filed, the majority entered a briefing order that *sua sponte* ordered plaintiffs to file a brief anticipatorily responding to an unspecified

- 5 -

affirmative defense related to timeliness. While defendants indicated they were not raising any such defense, the intervenors were permitted to file a brief to assert a *laches* defense in defendants' stead. This abdicated the court's role as neutral arbiter of plaintiffs' motion for leave to file the complaint.

¶ 18 I voted to allow the motion and to order defendants to answer the complaint at the time the deadline for filing a response to the motion had passed in silence. Had the majority done so and not invited a timeliness defense through its *sua sponte* briefing order, intervenors would not have had an opportunity to raise a *laches* defense at this juncture. For these reasons, the majority's decision to deny leave to file the complaint based on the merits of the *laches* defense was procedurally improper.

¶ 19 B. Intervenors' *Laches* Argument Fails to
Show Lack of Due Diligence

¶ 20 Moving to the substance of intervenors' *laches* defense, I disagree that intervenors have made the requisite showing that plaintiffs have not brought the proposed claims with due diligence. There are fundamental differences in plaintiffs' claims and "every previous redistricting case considered by this court since the adoption of the 1970 Constitution." See *supra* ¶ 5. An examination of the precise nature of these claims, as well as the evidence necessary to establish their elements, must inform an analysis of plaintiffs' diligence.

¶ 21 As the majority indicates, plaintiffs' proposed complaint contains a claim that the 2021 redistricting plan violates the requirement of article IV, section 3, of the Illinois Constitution (Ill. Const. 1970, art IV, § 3) that legislative and representative districts shall be compact. See *supra* ¶ 2. If this were the only constitutional infirmity for which plaintiffs are seeking redress, the majority's comparison with prior redistricting cases in assessing plaintiffs' diligence (*supra* ¶ 5) would be indicated because the factual basis for such claims is discoverable upon the redistricting plan's enactment. See *People ex rel. Scott v. Grivetti*, 50 Ill. 2d 156 (1971) (challenging composition of redistricting committee, compactness, and equality in population); *Schrage v. State Board of Elections*, 88 Ill. 2d 87 (1981) (challenging compactness of a single district); *People ex rel. Burris v. Ryan*, 147 Ill. 2d 270 (1991) (compactness); *Cole-Randazzo v. Ryan*, 198 Ill. 2d 233 (2001)

(compactness). However, the claims plaintiffs seek to have addressed in the proposed complaint require proof beyond the redistricting process, lines drawn in the redistricting plan, and the relative population of the resulting districts. Rather, in the proposed complaint, plaintiffs make allegations that the plan is a result of intentional partisan gerrymandering in violation of the constitutional requirement set forth in article III, section 3, that "[a]ll elections shall be free and equal" (Ill. Const. 1970, art. III, § 3), as well as this court's prior statements that redistricting plans must meet the "legal requirements regarding political fairness" (*Ryan*, 147 Ill. 2d at 297). See *Cole-Randazzo*, 198 Ill. 2d at 236.

¶ 22    This court has never adjudicated a claim of partisan gerrymandering or expounded on the "legal requirements regarding political fairness" in redistricting, although it has enumerated this requirement as separate from the requirements of compactness and population proportionality. See *Ryan*, 147 Ill. 2d at 297. For this reason, the timing of past challenges to redistricting plans has no bearing on plaintiffs' diligence here. Prior to 2019, claims such as those made by plaintiffs were primarily brought in the federal courts, but the United States Supreme Court in *Rucho v. Common Cause*, 588 U.S. 684, 718 (2019), ruled that such claims, when made in the context of the equal protection clause of the United States Constitution (U.S. Const., amend. XIV), are not justiciable. In so doing, the Court stated that state statutes and state constitutions can provide standards and guidance for state courts to apply in addressing redistricting complaints involving excessive partisan gerrymandering. *Rucho*, 588 U.S. at 719.

¶ 23    In bringing this action, plaintiffs are asking this court to address the issue of partisan gerrymandering as suggested by the Court in *Rucho* and, in support of their claim, have gathered data from two election cycles as is required by pre-2019 federal precedent. See *Davis v. Bandemer*, 478 U.S. 109, 135-40 (1986) (plurality opinion) (holding that claims of political gerrymandering require a history of disproportionate results based on more than a single election), *overruled on other grounds by Rucho*, 588 U.S. 684. While the majority is correct in its assertion that this court is not bound by the federal standard, it has not made a pronouncement of its own regarding the elements of such a claim. Thus, it is disingenuous to hold that plaintiffs' efforts indicate a lack of due diligence sufficient to justify this court's refusal to address the merits of such a claim and refuse to make such a

pronouncement.

¶ 24                    C. Intervenors' *Laches* Argument Fails to Show Prejudice

¶ 25        Finally, assuming a lack of diligence on plaintiffs' part in following federal precedent as to the proof required when making its unprecedented gerrymandering claim before this court, intervenors fail to show that they are prejudiced as a result. The majority has adopted intervenors' arguments wholeheartedly, noting that any redistricting plan would use the stale data collected in the last decennial census. *Supra* ¶ 7. In addition, the majority cites "uncertainty for voters and officeholders alike, now and in the future, as to whether any redistricting plan in Illinois is ever final." *Supra* ¶ 7. This reasoning is purely speculative and begs the question presented by plaintiffs' claims, rendering the propositions on which its reasoning is based premature. Plaintiffs seek to remedy what they claim they can prove to be partisan gerrymandering, which has been defined as "unconstitutional discrimination" that "occurs only when the electoral system is arranged in a manner that will consistently degrade a voter's or a group of voters' influence on the political process as a whole." *Davis*, 478 U.S. at 132. And if the claim is proven, and a new map is required to remedy the resulting prejudice to "voters and officeholders alike," equity could not justify the refusal to grant a remedy based on the prejudice of "uncertainty" to the same voters and officeholders. Moreover, even if the same "stale" data were used to draw the new map as was used to draw the current map, "voters and officeholders alike" would be in a better position. As explained by the written dissent to the unexplained order denying the motion for leave to file the complaint in *Cross*,

> "there is ample precedent for the principle that, while *laches* may bar the granting of redistricting relief in relation to an imminent election, it does not bar the granting of relief in relation to *subsequent* elections, which is what plaintiffs here are seeking. See, *e.g.*, *Martin v. Soucie*, 109 Ill. App. 3d 731, 732-34 (1982); *Wilson v. Kasich*, 963 N.E.2d 1282 (Ohio 2012)." (Emphasis in original.) *Cross*, No. 113840 (Thomas, J., dissenting, joined by Garman and Karmeier, JJ.)

Here, plaintiffs are not seeking to invalidate the results of any election or interfere with any election that is upcoming, and therefore intervenors have not proven

prejudice.

¶ 26                                 D. Conclusion

¶ 27     The court is being called upon to address the issue of partisan gerrymandering in the wake of the *Rucho* decision, which indicates that state courts are the more appropriate forum for such claims and that state constitutions provide standards and guidance for state courts to apply. *Rucho*, 588 U.S. at 719. While the court has, in fact, indicated "political fairness" is an Illinois constitutional requirement for redistricting plans, it has yet to provide standards and guidance to voters and officeholders as to what such "political fairness" entails and how this requirement is to be enforced in Illinois.

¶ 28     Mindful of the Illinois Constitution's provision that the court is to be the sole arbiter of redistricting claims and because I find the majority's refusal to address the issue under the guise of *laches* is unsupported, I would allow plaintiffs' motion for leave to file the complaint. To do so would uphold the court's duty to address these claims as an original proceeding and would allow for due process, culminating in an opinion that provides future guidance on the "political fairness" requirement that has been enunciated by the court in its prior precedent and states the court's position on the issue of political gerrymandering in Illinois. For these reasons, I respectfully dissent.

¶ 29     JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.