110

EDITH M. DIEHL *et al.*, Plaintiffs-Appellants, v. L. FRED OLSON *et al.*, Defendants-Appellees.

Third District   No. 3—85—0351

Opinion filed February 28, 1986.

Stephen L. Reed, of Oquawka, and Edward W. Dailey, Robert J. Todd, and Phillip Mahoney, all of Edward W. Dailey Law Offices, P.C., of Burlington, Iowa, for appellants.

Dawn A. Conolly, of Lucas, Brown & McDonald, of Galesburg, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the circuit court of Henderson County which dismissed certain equity counts in a complaint filed by the plaintiffs, Edith M. Diehl, Martha J. Pratt and Mary E. Steele, against the defendants, L. Fred Olson, Frank Olson, and L. Fred Olson as executor of the estate of Elizabeth G. Olson, deceased.

One of the plaintiffs, Martha Pratt, is not a party to this suit since she requested and received dismissal with prejudice from the case. Simply stated, the complaint sought to recover certain farms from the defendants so that they would become assets in the estate of their mother.

At age 91, Elizabeth G. Olson departed this life on July 31, 1978. She left surviving her six children, being four daughters, Edith M. Diehl, Martha J. Pratt, Mary E. Steele, and a daughter Ethel, with whom she resided. Ethel, however, departed this life prior to the institution of these proceedings. The sons surviving Elizabeth are the defendants, L. Fred Olson and Frank Olson.

The decedent Elizabeth Olson, with the assistance of an attorney, executed a will in 1969 to which she added a codicil on January 17, 1972. The will and codicil of the decedent provided that at her death several farms owned by her would be divided equally among her children and that the defendants Fred and Frank would have an option to purchase the same for a price determined at the date of her death.

In April 1974, the decedent, Elizabeth G. Olson, executed two contracts whereby she agreed to sell her farms, one farm to her son, the defendant L. Fred Olson, and one farm to her son, the defendant Frank Olson. Both contracts provided that the consideration for the purchase of the farms would be payable in installments. The defendants made all payments required by the contractual terms to an escrow agent and paid the consideration in full a year earlier than required.

The plaintiffs question the validity of these contracts, which were executed over nine years prior to the institution of this lawsuit. The suit was filed in July 1983, just two days short of the fifth anniversary of the death of Elizabeth G. Olson. It is the plaintiffs' contention that Elizabeth G. Olson was incompetent when the contracts were executed and that this incompetency continued until her death in 1978.

Since the execution of the contracts, time inexorably marched on, leaving its usual toll in its wake. Elizabeth G. Olson died as stated and her daughter Ethel, with whom she lived, also departed this life. Death also silenced other important defense witnesses, namely, attorney Stanton Prentice, defendants' attorney, and two appraisers who

valued the land for the decedent.

A court of chancery will refuse relief where by reason of the delay of a party in asserting a claim the evidence has been lost or so obscured so that the court is physically precluded from ascertaining the matter in dispute. *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341; *Bobin v. Tauber* (1976), 45 Ill. App. 3d 831, 360 N.E.2d 368.

The record in this case discloses that the plaintiffs by their own admission knew in advance that a sale of the farms from their mother Elizabeth to the defendants was contemplated. They had knowledge of the terms of the sale, obtained their own appraisal and learned in 1974 that the sale had been consummated. The evidence discloses that Martha Pratt, the daughter who withdrew as a party to this suit, had knowledge when the contracts for sale of the land were executed. She possessed this knowledge on the very day they were executed. In the summer of 1974 the defendant Fred Olson discussed with his sister Mary Steele that the sales had taken place. During the same time frame, the summer of 1974, the defendant Frank Olson had a like discussion with his sister Edith Diehl.

The trial court, after hearing extensive testimony, made a number of findings, among which was that the plaintiffs knew or reasonably should have known that a cause of action, if any existed, arose in April of 1974, said date being nine years and three months prior to the time they filed suit and four years prior to the death of Elizabeth Olson.

The defendants, as a result of the delay of the plaintiffs in filing suit, were seriously prejudiced by the death of witnesses who had actual knowledge as to what the actual circumstances were at the time the contracts for sale of the farms were negotiated and consummated.

It is further noted that the defendants were further prejudiced by the long delay in that they made significant improvements on the farms and throughout the years paid taxes on the same. A party is barred from asserting a claim when he remains passive for a long time while permitting an adverse claimant to make expenditures in improving the property involved in the action and paying taxes thereon. *Schroeder v. Schlueter* (1980), 85 Ill. App. 3d 574, 407 N.E.2d 204; *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341; *Freymark v. Handke* (1953), 415 Ill. 360, 114 N.E.2d 349.

The plaintiffs in an effort to thwart the application of the doctrine of *laches* raise several issues, one of which is that the defendants had the burden of showing clean hands prior to their application of the doctrine of *laches* and they, the defendants, did not meet this

burden. This assertion of the plaintiffs is not well founded since the defendants had no burden to meet with respect to the doctrine of clean hands since it is inapplicable when defendants are seeking defensive relief from a court of equity and are not counterclaiming. *Myers v. Myers* (1977), 51 Ill. App. 3d 830, 366 N.E.2d 1114; *Klosowski v. Klosowski* (1914), 266 Ill. 360, 107 N.E. 634; 7 A.L.R.2d 1350 (1949).

■ Though the clean hands doctrine is not a burden to be met by the defendants, the record is nevertheless replete with evidence that the defendants did at all times during the transaction with their mother have clean hands. The attorney for Elizabeth testified that Elizabeth sought his assistance in arranging for the sale of the farms, that arrangements were made for a fair appraisal as to their value and the appraised figures were accepted as the contract prices. The attorney met with Elizabeth alone on three separate occasions for lengthy periods of time and determined that she wanted to sell to the defendants, that she understood the contractual terms and persisted in her desire to consummate the sale arrangements.

■ In a further effort to avoid the application of *laches*, the plaintiffs allege that an express trust existed between the defendants and their mother Elizabeth. This assertion is without substance. An express trust whose subject matter is realty must be in writing to be valid. (*Kraft v. Kretchman* (1959), 17 Ill. 2d 71, 160 N.E.2d 806.) The writing creating the trust must contain all necessary elements of an express trust, it must disclose the property embraced, the beneficiaries in whose behalf it is created and the manner in which the trust is to be executed. In the instant case, there is no written evidence of a trust, and hence it follows the requisite elements of an express trust are not *in esse*.

■ The plaintiffs further argue that since the trial court did not apply the statute of limitation to the equitable counts, then the defendants should have shown not only that there was an unexplained delay, but also that it would be inequitable to grant relief in this case. We find no merit in this argument. Simply because the trial court applied *laches* rather than the statute of limitation does not mean that the court did not utilize the statute of limitation period as a guide. The applicable statute of limitation period is five years. (Ill. Rev. Stat. 1983, ch. 110, par. 13—205.) Elizabeth Olson died four years and two months after the contracts were signed. The plaintiffs had a year to bring their action with the statute of limitation period. (Ill. Rev. Stat. 1983, ch. 110, par. 13—209.) The plaintiffs' suit was barred by the statute of limitation; however, that does not mean that the trial court

could not find *laches*, nor does it mean that by the trial court applying *laches* a greater standard of prejudice to the defendants must be proved. Cases heretofore cited regarding *laches* illustrate that there was ample evidence of prejudice to the defendants to support the court's application of *laches*.

The plaintiffs in their continued assault upon the application of *laches* claim that such application of the doctrine is barred because the decedent possessed alleged causes of action prior to her death. If we correctly interpret plaintiffs' contention, it is their claim that *laches* is inapplicable because they claim they could have done nothing prior to Elizabeth's death. This assertion appears to be one emanating from desperation. If, as plaintiffs claim, Elizabeth was incompetent, they could have sought the appointment of a guardian. They could have also filed an action for intentional interference with an expectancy. *Robinson v. First State Bank* (1982), 104 Ill. App. 3d 758, 433 N.E.2d 285.

Lastly, the plaintiffs claim that the trial court erred by excluding hearsay copies of medical records of the decedent. The plaintiffs filed an affidavit, as did the custodian of medical records, incorporating certain medical information pertaining to the decedent Elizabeth. The information was not within the affiant's personal knowledge and therefore constituted hearsay. Medical records are specifically exempted from the business record exception to the hearsay rule. (87 Ill. 2d R. 236(b).) The trial court correctly excluded the hearsay copies.

Having concluded that the trial court correctly ruled that the plaintiffs' suit is barred by *laches*, we need not consider other substantive issues in the case. We are, however, of the opinion that a brief resume of the evidence regarding the alleged incompetence of Elizabeth Olson should be set forth. Eight witnesses testified that Elizabeth was competent not only at the time of executing the contracts in 1974 but up until the latter days of her last illness. Among the witnesses were her attorney, her priest, her hair dresser from 1973 to 1978, and her close friend and traveling companion, Mrs. Stevens, who saw her daily. The plaintiffs failed to produce any creditable evidence supporting their charge of incompetency.

The claim that the defendants, and especially Fred, had a fiduciary relationship with their mother Elizabeth can be supported; however, it is well established that such relationship does not *per se* support findings of fraud or undue influence. A voluntary transaction can still be entered into between a parent and child even if a fiduciary relationship exists between them. (*Freymark v. Handke* (1953), 415 Ill. 360, 114 N.E.2d 349; *Stone v. Stone* (1950), 407 Ill. 66, 94 N.E.2d

855.) The evidence establishes that the defendant Fred when a boy quit school and went to work on the farm when his father was unable to do so because of problems of health, that he bought shoes for the children and purchased for his mother her first motorized washing machine. There was testimony that without Fred the family would not have made it. As time went by, the defendants Fred and Frank farmed land owned by their mother. Fred had a power of attorney from his mother and acted as her agent. There is not a scintilla of evidence that he overreached and took advantage of his relationship with his mother. He was scrupulously honest.

For the reasons set forth the judgment of the circuit court of Henderson County is affirmed.

Affirmed.

BARRY and WOMBACHER, JJ., concur.