Patrick HELD, Plaintiff–Appellant,

v.

Robert T. HELD, Sr., individually and as Trustee of Bodee Investment Trust Municipal Bond Portfolio of Patrick Held, Defendant–Appellee.

Nos. 96–3648, 97–1125.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1997.

Decided March 4, 1998.

Rehearing Denied April 8, 1998.

Carl M. Walsh (argued), Chicago, IL, for Plaintiff–Appellant.

James K. Meguerian, Victoria Perette Hallock (argued), D'Ancona & Pflaum, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Patrick Held sued his uncle, Robert Held, over a purported trust agreement. Because Patrick waited too long to bring suit, however, the Held family must find some extra-judicial resolution for their problems.

## I.

Before we begin relating this sorry tale of family discord, we note that on summary judgment, we are obliged to construe the facts in a light most favorable to the party opposing summary judgment, in this case, the plaintiff Patrick Held. Thus, although Robert Held vigorously disputes these facts, we assume for the purposes of this analysis that these facts are true. Although the Held family problems probably arose much earlier, the events relevant to this suit began in March, 1976, as Patrick's mother Geraldine lay dying. A number of years earlier, Pat-

rick's grandmother, Agnes Held Glomski, had given Patrick approximately $320,000 worth of municipal bonds, with instructions that Patrick was to use the bonds to care for himself and his mother. A few years after that, Patrick's uncle Robert Held, the brother-in-law of Geraldine, began pressuring Patrick to turn the bonds over to him. Patrick lived with his mother in a house owned by Robert, and in 1976, Robert intensified his pressure on Patrick to relinquish the bonds by threatening to put Patrick and his ailing mother out of the house. In March of that year, Patrick succumbed to the pressure, turning the bonds over to his uncle's lawyer in exchange for the promise that Robert would invest the bonds and eventually return all the proceeds to Patrick. A few months later, Patrick's mother died.

Patrick became suspicious of his uncle's true intentions almost immediately and began asking him when he would get his money back. For the next ten years, Robert assured Patrick he would return the bonds or pay Patrick the proceeds of the bond investments, but never actually made any payments. In October 1986, Robert told Patrick that the bonds had been placed in a trust fund, that Robert would pay ·Patrick the $320,000 principal in 1998, would pay him $15,000 annually until 1998, and would pay Patrick's down payment on a condominium. Robert did make a $25,000 down payment for Patrick's condominium in 1987. Also in 1987, Rosalind Lucy, Robert's employee, sent a letter (the "Lucy Letter") to a bank where Patrick was trying to obtain a mortgage, confirming Patrick's trust income of $15,000 per year. The Lucy Letter stated that Patrick had an interest in the Bodee Investment Trust Municipal Bond portfolio, and that Patrick would receive these yearly payments until 1998, at which time the bonds would mature. Lucy signed the letter as a "Trust Officer." However, Robert never paid Patrick any of the $15,000 installments, and never returned the principal of the trust. Patrick complained regularly about Robert's failure to make the payments, and in 1995, Patrick made written demands for an accounting and payment.

In September 1995, Patrick filed a complaint against his uncle, claiming breach of fiduciary duty, constructive trust, and conversion. He also requested an accounting. Robert moved for summary judgment on the grounds that Patrick failed to file his action within the period of limitations set by law. The district court agreed that Patrick had failed to file his action within the five year period allotted by statute for all of the claims. The court refused to apply the ten year statute of limitations for an action on a written contract or "other evidence of indebtedness in writing," ruling that the Lucy Letter was insufficient as a matter of law to trigger this provision.

## II.

On appeal, Patrick challenges the district court's finding that the Lucy Letter was legally insufficient to trigger a ten year statute of limitations. He also contends that the court erred in awarding certain costs to Robert. Before we address either of these matters, we must attend to a jurisdictional issue. At oral argument, we pointed out to Patrick that, although the parties claimed diversity jurisdiction, the complaint failed to allege the citizenship of either party, instead stating the residence of each. Of course, allegations of residence are insufficient to establish diversity jurisdiction. It is well-settled that "[w]hen the parties allege residence but not citizenship, the court must dismiss the suit." *Guaranty Nat'l Title Co. v. J.E.G. Assoc.*, 101 F.3d 57, 58 (7th Cir.1996). The Court apprised Patrick that unless he requested leave of court to amend the complaint pursuant to 28 U.S.C. § 1653, we would dismiss the suit. Patrick assured the Court that he could properly allege diversity jurisdiction, and within ten days after oral argument, he filed his section 1653 request to amend the complaint. The proposed Second Amended Complaint alleges that Patrick is a citizen of Illinois and that Robert is a citizen of Florida. Accordingly, we grant the motion to amend the complaint, and proceed to the merits.

### A.

On appeal, Patrick contends that the applicable statute of limitations for his action

against his uncle is the ten year period designated by Illinois law for actions on written obligations:

> Ten year limitation. Except as provided in Section 2–725 of the "Uniform Commercial Code," actions on bonds, promissory notes, bills of exchange, written leases, written contracts, *or other evidences of indebtedness in writing*, shall be commenced within 10 years next after the cause of action accrued; but if any payment or new promise to pay has been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay.

735 ILCS 5/13–206 (emphasis added). Patrick argues that the Lucy Letter constituted "other evidence of indebtedness in writing," and that his uncle's payment of $25,000 in 1987 renewed the limitations period. Because he filed suit within ten years of his uncle's contribution to the down payment for his condominium, he contends his action should survive summary judgment.

We begin, then, with the Lucy Letter. The letter is written on what appears to be a business letterhead. The copies of the letter provided in the record are of poor quality, and all we can discern of the name of the business is "Investment Trust," with a Pompano Beach, Florida address. The letter is addressed to Rick B. Hilt at the Hinsdale Federal Savings and Loan Association in Hinsdale, Illinois. The letter states in full:

> Please be advised that the undersigned manages the interest in the Bodee Investment Trust Municipal Bond portfolio of Patrick Held.
>
> Patrick's tax free income of said trust is $15,000 per year payable in one payment on the 15th day of April.
>
> This income will continue through March 31, 1998 at which time all the bonds he has an interest in will mature.

Record at 34. The letter is signed by Mrs. Rosalind G. Lucy, Trust Officer. Patrick claims that Lucy is his uncle's agent and employee, and we are obliged on summary judgment to construe the facts in Patrick's favor. We will also assume that the $25,000 down payment was a partial payment under the alleged trust agreement. Notably, Patrick does not claim that the trust agreement is in writing, but only that the Lucy Letter is "other evidence of indebtedness in writing." In other words, the Lucy Letter is written evidence of an oral trust agreement.

■ This distinction turns out to be determinative under Illinois law. "Whether an action is based on a written contract or on any other evidence of indebtedness in writing, the action must be upon the writing and it is not enough that the evidence by which the cause of action is supported is in writing." *Ames v. Crown Life Ins. Co. of Toronto, Canada*, 85 Ill.App.3d 203, 40 Ill.Dec. 521, 525, 406 N.E.2d 222, 226 (1980) (quoting *Estate of Garrett v. Garrett*, 24 Ill.App.3d 895, 322 N.E.2d 213, 215–16 (1975)). *See also Armstrong v. Guigler*, 174 Ill.2d 281, 220 Ill.Dec. 378, 383, 673 N.E.2d 290, 295 (1996) ("the fact that the origin of a cause of action may ultimately be traced to a writing has never been sufficient, standing alone, to automatically warrant application of the period of limitations governing written contracts"). The Lucy Letter is, at best, evidence supporting the cause of action, but it is not a trust agreement or contract. Patrick's cause of action against his uncle is not founded on the Lucy Letter "merely because it is indirectly connected with the writing or because the writing may be a link in the chain of evidence establishing liability." *Ames*, 406 N.E.2d at 226.

■ Illinois courts strictly interpret the meaning of a written contract and "other evidence of indebtedness" within the statute of limitations. "A contract is considered written for purposes of the statute of limitations if all essential terms are reduced to writing and can be ascertained from the instrument itself.... If parol evidence is necessary to make the contract complete, then the contract must be treated as oral for purposes of the statute of limitations." *Toth v. Mansell*, 207 Ill.App.3d 665, 152 Ill.Dec. 853, 856, 566 N.E.2d 730, 733 (1990). Similarly, a written document qualifies as "other evidence of indebtedness" under section 13–

206 only when one need not resort to parol evidence to establish the necessary elements of the agreement. *Id.* The necessary elements for an express trust include 1) disclosure of the property involved; 2) identification of the beneficiaries in whose behalf the trust is created; and 3) the manner in which the trust is to be executed. *Diehl v. Olson,* 141 Ill.App.3d 110, 95 Ill.Dec. 456, 459, 489 N.E.2d 1184, 1187 (1986). Under these standards, the Lucy Letter is neither a contract nor an express trust, and therefore is not subject to the ten year statute of limitations.

Under Illinois law, actions on unwritten contracts and all civil actions not otherwise provided for by statute are governed by a five year statute of limitations. *See* 735 ILCS 5/13–205. This provision has been deemed applicable to actions for fraud and deceit, actions for tortious misrepresentation and actions for enforcement of constructive trusts. *See Chicago Park District v. Kenroy, Inc.,* 78 Ill.2d 555, 37 Ill.Dec. 291, 294, 402 N.E.2d 181, 184 (1980). Accordingly, the five year limit is applicable to Patrick's action, and the district court properly granted summary judgment in favor of Robert.

### B.

 The final issue to resolve is whether the district court erred in its award of costs to Robert pursuant to Federal Rule of Civil Procedure 54 and 28 U.S.C. § 1920. The court assessed costs in the amount of $3,636.47 against Patrick. Patrick now complains that the court included in these costs the expense of videotaping certain depositions, even though Robert did not seek prior court approval for the videotaping. Patrick also complains that Robert should not be allowed to recover the cost of expedited transcripts or deposition attendance fees. We review the district court's award of costs for abuse of discretion. *M.T. Bonk Co. v. Milton Bradley Co.,* 945 F.2d 1404, 1409 (7th Cir.1991).

Patrick's argument is frivolous to the extent it challenges the award of costs for expedited transcripts because the district court specifically disallowed Robert from recovering this cost. As for the deposition attendance fees charged by the court report-

er, we have previously held that even though these fees are not specifically mentioned in the statute, the district court may award them in its discretion pursuant to 28 U.S.C. § 1920(2). *See Finchum v. Ford Motor Co.,* 57 F.3d 526, 534 (7th Cir.1995); *SK Hand Tool Corp. v. Dresser Industries, Inc.,* 852 F.2d 936, 944 (7th Cir.1988), *cert. denied,* 492 U.S. 918, 109 S.Ct. 3241, 106 L.Ed.2d 589 (1989). Patrick offers no reason for us to find the court abused its discretion in granting attendance fees here. Finally, we see no reason to question the district court's exercise of discretion in awarding the cost of videotaping a deposition of an out-of-state witness. As the district court explained, Robert presented valid arguments in support of the videotaping, and we will not second-guess the district court's considered decision. *See Commercial Credit Equipment Corp. v. Stamps,* 920 F.2d 1361, 1368–69 (7th Cir. 1990) ("[a] videotaped deposition qualifies as 'other than stenographic means,' and as such is taxable as a substitute for a stenographic transcript, even though it is more expensive"). We therefore affirm the district court's award of costs to Robert in the amount of $3,636.47.

### III.

Tolstoy wrote, "Happy families are all alike; but every unhappy family is unhappy in its own way." ANNA KARENINA 1 (C. Garnett trans.1933). The Held family's unhappiness manifested itself in litigation, but the courts cannot resolve this stale dispute. Statutes of limitation are necessary restraints on litigation. As the Supreme Court noted more than fifty years ago:

> Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay.

*Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) (internal citations omitted). This case is a fitting example of the utility of statutes of limitation, where the dispute is based on an oral agreement made more than twenty years ago, where key witnesses are deceased, and where memories have surely faded or been clouded by twenty years of contentious family disputes. The judgment is, therefore,

AFFIRMED.