(No. 19809.

ADOLPHUS LEGOUT *vs.* AUGUST LEVIEUX *et al.*—(AUGUST LEVIEUX, Appellant, *vs.* W. M. PRICE, Appellee.)

*Opinion filed December 20, 1929—Rehearing denied Feb. 11, 1930.*

McGAUGHEY, TOHILL & McGAUGHEY, and SHAW & HUFFMAN, for appellant.

GEE & GEE, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an appeal by August LeVieux from a decree of the circuit court of Lawrence county in favor of Adolphus LeGout and others against appellant and others.

In 1875 Julian LeGout, ancestor, executed a written instrument whereby he attempted to convey 154 acres of land in Lawrence county to his son, Adolphus LeGout, for life, with the remainder to his children, the grantor reserving to himself a life use of the lands. About two years after the execution of this written instrument Julian died and Adolphus went into possession of the lands under said instrument. He continued in the possession of the lands, doing such work and improvement thereon as would be usual for a life tenant in the occupancy and cultivation of lands over a period of years. Some time during the year 1912 he and his married daughter, Georgia Forshier, became indebted to William M. Price, and to secure the payment of the debt Adolphus and his wife, Mary, and Georgia Forshier and her husband, Bert Forshier, executed and delivered to Price a mortgage on these lands. When the debt became due the mortgagors were unable to pay, so they made and delivered to Price, under date of April 14, 1914, a deed conveying to him an undivided one-fourth interest in said lands. Adolphus had four children at that time, and this deed to Price for a one-fourth interest represented Georgia's interest in the land, which she claimed in fee. After the making of this deed to Price, Adolphus and his wife entered into a written agreement with Price whereby a certain 40 acres of the 154 acres were set off to Price, to hold during the life tenancy of Adolphus, in lieu of the undivided one-fourth interest, and which provided that upon termination of the life tenancy Price should relinquish his possession of the 40 acres and return to an undivided one-fourth interest in the entire tract. Price went into possession of the 40 acres and still is in possession, as Adolphus is yet alive. Thereafter Adolphus and his wife and Georgia

Forshiér and her husband filed their bill in chancery in the circuit court of Lawrence county to the May, 1915, term, against Price, in which they asked that the deed to Price be declared a mortgage and they be allowed to pay it off. Oil had been discovered on the premises. Adolphus charged that Price had received more than his share of the profits from the oil from the premises and asked for certain orders relative to an accounting with respect to money then in the hands of the attorney in fact, who was selling the oil. Price filed his answer denying these allegations, and also filed his cross-bill, alleging that he had not received his share of the oil money and asking for an accounting and for more money, etc. He further alleged and set up in his cross-bill that Adolphus was in possession of said lands as a life tenant under a deed from Julian LeGout, his father, and Adolphus in his answer to the cross-bill admitted that he was in possession of said lands as a life tenant, as alleged. A trial was had at the October term, 1915, and among other things the court held the deed to Price valid and that Adolphus had a life estate in said lands and was in possession thereof as a life tenant. No appeal was taken from this decree. After this had transpired, Price, on the 28th day of June, 1916, obtained a deed for another undivided one-fourth interest in the said lands from Joseph LeGout, who was single and one of Adolphus' four children. Adolphus did not join in this deed.

Adolphus LeGout brought his bill in chancery to the October term, 1920, of the circuit court of Lawrence county, asking that by force of the rule in *Shelley's case* he be decreed owner in fee of the above lands instead of a life tenant, making Price and the children of Adolphus parties defendant. The trial court applied the rule and decreed Adolphus to be the owner in fee of the lands. Price perfected an appeal to this court in an effort to protect his undivided one-fourth interests that he had bought from Joseph LeGout and Georgia Forshier, and this court by its opinion rendered at the October term, 1925, held the sup-

posed deed from the common ancestor, Julian LeGout, to Adolphus void and inoperative. (*LeGout* v. *Price,* 318 Ill. 425.) Adolphus then filed in the circuit court of Lawrence county his bill in chancery to the February term, 1926, which is the present case, asking to be decreed the owner of said lands by right of prescription. This suit was brought by Adolphus as sole complainant, and was directed against Price and the other heirs of the common ancestor, Julian LeGout. Price answered, denying the allegations made and the relief sought and filed his cross-bill, asking for a reformation of the instrument of conveyance from Julian LeGout to Adolphus so as to make the word "heirs" read "children," and such further reformation as might be necessary to make the instrument effective and to give Adolphus a life estate in the lands with a remainder to his children. August LeVieux and others, being other heirs of the common ancestor, Julian LeGout, also filed their answer to Adolphus' bill, denying the allegations made as to adverse possession and alleging that Adolphus had never been in the custody or possession of the said lands otherwise than under claim as a life tenant, that he never advanced any claim of ownership in fee until 1920, when he sought to invoke the rule in *Shelley's case,* and denied that he was entitled to the relief sought. They then filed their cross-bill, alleging themselves to be the surviving heirs of the common ancestor other than Adolphus; that the common ancestor died intestate as to this land, and he having had five children, all deceased now except Adolphus, they were heirs to four-fifths of said premises and Adolphus was heir to a one-fifth interest, and prayed for partition accordingly. The cross-complainants demurred to Price's cross-bill for a reformation of the supposed deed from Julian to Adolphus upon two grounds, namely, that a court could not give life to an instrument that never possessed legal existence, and that equity will not correct an instrument for a mere mistake of law. The demurrer was sustained.

The cause came on for hearing on the original bill of Adolphus LeGout, the cross-bill of LeVieux and others and the answers of the respective parties, with Price trying to hold and protect in himself an undivided one-half interest in said lands by virtue of his purchase of the supposed undivided one-fourth interest in the fee from two of Adolphus' children, as aforesaid. The cross complainants took the position that the most that Price could claim was a lien on Adolphus' inheritable interest in said land from his father, Julian LeGout, and this only by virtue of the one-fourth interest purchased from Georgia Forshier, in which Adolphus joined, and that from Adolphus' son Joseph, Price could obtain no better title than Joseph had, and that as Joseph had no title Price had none. The court decreed that Adolphus should have a life estate in said lands with remainder in fee to his children; that since Price had bought out two of the children he was the owner in fee of one-half of the lands, and since Adolphus had joined in one of these deeds and did not join in the other, one of Price's one-fourth interests was subject to Adolphus' life estate; that cross-complainants take nothing; that their cross-bill be dismissed for want of equity; that Adolphus' child, Louis LeGout, take a remainder in one-fourth of the fee, and the heirs of Julian M. LeGout, Jr., who is a deceased son of Adolphus, take the remainder in fee in one-fourth of said lands.

Whatever interest appellant might have had in the property he acquired upon the death of Julian LeGout in 1877. Ever since that time he has known that Adolphus LeGout then held possession of the property, claimed it for himself and his children, and up until the trial had remained in his possession under such claim (except as to the portion deeded to Price) until just prior to the commencement of the suit which terminated in the judgment of this court in *LeGout* v. *Price, supra*. Appellant had notice of such claim of ownership, of the mortgage to Price, of the two deeds to

Price, of the making of a lease to the Midwest Oil Company, of the appointment by the county court of Lawrence county of a guardian for LeGout's minor children in order that such guardian could make an oil lease of the property for them in 1906, of the suit between LeGout and Price, of the decree of the circuit court of Lawrence county finding that LeGout had a life interest in the property and finding the deed to Price valid, and of Price's claim of ownership of an undivided one-half of the premises subject to a life interest of LeGout in one-fourth, yet for over fifty years, until the filing of the answer and cross-bill herein, he and his parents stood by, acquiesced in the claims of the Le-Gouts and Price, and never by word or deed controverted these claims or made claim of any interest in the premises for themselves.

When a court of equity is asked to lend its aid in the enforcement of a demand that has become stale there must be some cogent and weighty reasons presented why it has been permitted to become so. Good faith, conscience and reasonable diligence of the party seeking its relief are the elements that call a court of equity into activity, (*McDearmon* v. *Burnham*, 158 Ill. 55; *Castner* v. *Walrod*, 83 id. 171; *Carpenter* v. *Carpenter*, 70 id. 457;) and the absence of any one of these elements is fatal to a recovery. There is no difference in the application of this doctrine whether it is interposed as against relief sought by an original or a cross-bill. (*Wilcoxon* v. *Wilcoxon*, 230 Ill. 94.) Appellant admits full knowledge of all the facts. His only excuse for not asserting any rights which he may have had was ignorance of the law. *Ignorantia legis neminem excusat* is an old maxim, which is applied in this State as to ignorance of the laws of this State. (*Marshall* v. *Colman*, 187 Ill. 556.) It would be impossible to administer the law if ignorance of its provisions were a defense thereto or could be used as an excuse for non-compliance therewith. (*Untermehle* v. *Norment*, 49 U. S. (L. ed.) 655.) Appel-

lant, with full knowledge of the facts, having allowed any rights which he might have had to lie dormant, as shown by the evidence in the case, the court was fully justified in dismissing the cross-bill. No appeal having been taken from the decree of the circuit court at the October term, 1915, it was binding upon LeGout and Price as between themselves. No persons other than the appellant are here complaining.

The decree of the circuit court will be affirmed.

*Decree affirmed.*