2019 IL App (2d) 180965-U
No. 2-18-0965
Order filed December 17, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff and Respondent-Appellee, | ) | |
| | ) | |
| v. | ) | No. 09-CH-2569 |
| | ) | |
| SANDY S. NGUYEN, PAUL P. NGUYEN, | ) | |
| STATE FARM BANK, FSB, MORTGAGE | ) | |
| ELECTRONIC REGISTRATION SYSTEMS, | ) | |
| INC., as Nominee for Corinthian Mortgage | ) | |
| Corp., d/b/a Southbanc Mortgage, FIA CARD | ) | |
| SERVICES, N.A., f/k/a Bank of America, | ) | |
| N.A. (USA), CHASE BANK USA, N.A. | ) | |
| f/k/a Chase Manhattan Bank USA, N.A. | ) | |
| f/k/a Bank One Delaware, N.A., UNKNOWN | ) | |
| HEIRS AND LEGATEES OF SANDY S. | ) | |
| NGUYEN, UNKNOWN HEIRS AND | ) | |
| LEGATEES OF PAUL O. NGUYEN, | ) | |
| UNKNOWN OWNERS, and NONRECORD | ) | |
| CLAIMANTS, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (Sandy S. Nguyen and Paul P. Nguyen, | ) | |
| Defendants and Petitioners-Appellants; | ) | |
| PennyMac Loan Services, LLC, Intervenor- | ) | Honorable |
| Appellee; Ross E. Tinson, Ryan C. Tinson, | ) | Robert W. Rohm, |
| and Unknown Occupants, Respondents). | ) | Judge, Presiding. |

_____

JUSTICE HUDSON delivered the judgment of the court.

Justices Jorgensen and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court abused its discretion in denying defendants' motion to make its dismissal of their section 2-1401 petition without prejudice and allow them to file an amended petition, as defendants sought to raise a voidness claim, which they could raise at any time and which the court had a special responsibility to address.

¶ 2    Sandy S. Nguyen and Paul P. Nguyen, the homeowner defendants in a mortgage foreclosure action, appeal from the dismissal of a petition for relief from judgment by which they sought to quash service on them in the foreclosure action. The Nguyens assert that the circuit court abused its discretion when, after dismissing their first amended petition with prejudice, it denied them leave to file a second amended petition setting out a new theory of the case. Because the Nguyens set out a plausible basis for concluding that the foreclosure judgment was void, and because such a claim should be addressed on its merits, we agree with the Nguyens and thus reverse the denial and allow them to file their amended petition.

¶ 3                                I. BACKGROUND

¶ 4    On July 7, 2009, Wells Fargo Bank, N.A., holder of the first mortgage on the Nguyens' property at 52 Jacobsen Avenue, Glendale Heights, filed an action for foreclosure. The named defendants were the Nguyens and four lienholders: (1) State Farm Bank, FSB; (2) Mortgage Electronic Registration Systems, Inc., as nominee for Corinthian Mortgage Corporation, d/b/a Southbanc Mortgage; (3) FIA Card Services, N.A., f/k/a Bank of America, N.A. (USA); and (4) Chase Bank USA, N.A., f/k/a Chase Manhattan Bank USA, N.A., f/k/a Bank One Delaware, N.A.

¶ 5    Wells Fargo, in its initial attempt to locate the Nguyens for service, found four possible addresses for them: (1) the property itself; (2) another Glendale Heights address, 182 East Montana Avenue; (3) an address in Champaign, Illinois; and (4) 6002 Westknoll Drive, apartment 611, in

Grand Blanc, Michigan. Wells Fargo's process servers learned that the property was vacant and that other people resided at the remaining two Illinois addresses. One new resident told a process server that the Nguyens had moved to Texas. However, the process server who went to the Grand Blanc address, although unsuccessful at serving them, did get confirmation that the Nguyens lived at that address. According to the process server's "Affidavit of Avoidance," she went to the Grand Blanc apartment seven times on five weekdays starting July 14, 2009, and ending July 20, 2009. She went at times ranging from 6:45 a.m. to 9:10 p.m. On July 20, 2009, the apartment complex manager confirmed that the address was good. The affidavit contained further indications that the Nguyens lived in the Grand Blanc apartment:

"A. Per neighbors, defendant resides at the above address.

B. [The Michigan Department of Motor Vehicles] has defendant listed at the above address[.]

C. Post Office confirmed that mail for defendant is delivered to this address."

However, Wells Fargo's "Affidavit of Due and Diligent Search," executed on August 6, 2009, averred that "[a]fter diligent search and inquiry by affiant, the residence of the subject person is unknown to the affiant."

¶ 6    On September 11, 2009, Wells Fargo filed an affidavit in support of service by publication, summarizing the investigation and service attempts. Wells Fargo completed publishing the notices required for service by publication on September 15, 2009. Notice by publication appeared in the Daily Herald on September 15, 22, and 29, 2009. The record does not contain anything to indicate that the clerk attempted to mail any notice of this publication to the Nguyens at any address.

¶ 7    The Nguyens did not appear, and on November 3, 2009, the court granted a default judgment and a judgment for foreclosure and sale. Further, the court limited the redemption period

for the property to 30 days on the basis that the Nguyens had abandoned it. On December 24, 2009, Wells Fargo served a notice of sale by mail on all named defendants. It mailed the notice to the Nguyens both at the property and at the Montana Avenue address. It mailed the notice of the motion to confirm the sale to the Nguyens at the same addresses. The court confirmed the sale on February 9, 2010.

¶ 8    On May 4, 2017, the Nguyens filed a "Petition to Quash Service"—that is, a petition to vacate a void judgment under section 2-1401(f) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(f) (West 2016)). The Nguyens sought to restore their possession of the property, which had new owners, Ross E. Tinson and Ryan C. Tinson, and a new mortgagee whose assignee was PennyMac Loan Services, LLC. The Nguyens named the Tinsons and PennyMac as respondents.

¶ 9    PennyMac appeared and moved to dismiss the petition. It argued, among other things, that the petition failed to state a claim in that the record showed that Wells Fargo met all conditions for service by publication. The Nguyens filed an amended petition on December 8, 2017. They asserted that the "Publication Affidavit [was] stale in that it shows that [Wells Fargo] was not diligent in its search for the Nguyens because the actions taken to find [them] were in April 2011 [*sic*], but the Affidavit was filed over five months later, in September 2009." They also asserted that the "court file does not contain any evidence that the Clerk of the Circuit Court mailed the notice of publication to the Nguyens as is required by section 2-206(a) [of the Code (735 ILCS 5/2-206(a) (West 2016))]." Further, Wells Fargo "failed to strictly comply with the statute for service by publication."

¶ 10    PennyMac, after being granted leave to intervene in the action, filed a second motion to dismiss. It argued that the Nguyens' claim that the affidavit was "stale" misrepresented the facts. Further, "[t]he lack of a certificate in the court file attesting to the clerk's mailing of the publication

notice [was] not a defect in the record," as the Code required only that the clerk mail the publication notice, not that a certificate of mailing appear in the record. Finally, lack of jurisdiction was not apparent from the face of the record, so section 2-1401(e) of the Code (735 ILCS 5/2-1401(e) (West 2016)) would act to prevent the Nguyens from divesting PennyMac. Wells Fargo appeared and adopted all of PennyMac's motion except the final section.

¶ 11    The court dismissed the Nguyens' petition with prejudice on June 21, 2018, and entered an order to that effect on June 27, 2018. It ruled that the petition failed to state a claim for three reasons:

> "The Circuit Court Clerk was not required to mail the notice of publication to Petitioners since the affidavit of publication indicated that their residence could not be ascertained, the Clerk's certificate of mailing notice was not required [by section 2-206(a)] to be included in the court's file, and the Petitioners did not provide an affidavit in support of their amended petition."

At the hearing on the motion to dismiss, the court said that it would allow the Nguyens to "either plead over or stand on [their] current [petition]." PennyMac objected on the basis that an amendment would extend its uncertainty, but the court said that that was why it was offering the Nguyens the opportunity to replead:

> [PENNYMAC:] ***
>
> *** I, respectfully, object to the opportunity for them to amend again and leave open for my clients who would like to move forward knowing that their interest is safe and secure in a property that the petitioners have not had an interest in for the last seven years without further opportunity for them to amend.

THE COURT: Yes, that is my goal, too. And that is why I am going to give her the opportunity to re-plead if she wants. *** Do you want to go through all that and have this come back and have this drag on for another eight years? I don't. So I will give her one last opportunity."

The Nguyens declined the opportunity to replead. They stated that, if the court were correct that the clerk did not need to mail a notice to a defendant when a plaintiff could not ascertain that defendant's address, then amending the petition would be futile. The court therefore made the dismissal with prejudice.

¶ 12    On July 20, 2018, the Nguyens, with the representation of new counsel, moved for leave to file a second amended petition. They sought to correct the supposed lack of affidavits by incorporating the affidavits of the process server who confirmed the Grand Blanc address. A copy of the proposed amended petition was attached. In it, the Nguyens sought to assert that the affidavits included in Wells Fargo's filings were enough to confirm the Grand Blanc address as their residence.

¶ 13    PennyMac responded, arguing, among other things, that the dismissal was final and that the Nguyens therefore had no right to amend after the order's entry. Wells Fargo also responded, asserting, among other things, that the Nguyens' motion was in fact a motion for reconsideration in disguise, and an improper one, as it raised no new facts. The Nguyens replied, arguing, among other things, that they were seeking to amend their pleadings to conform with the proofs. They further asserted that the evidence showed that their residence was in Michigan and that they should be allowed to amend their petition to reflect that.

¶ 14    The court denied the Nguyens' motion for leave to amend on October 23, 2018. The Nguyens filed a notice of appeal on November 21, 2018.

¶ 15                                    II. ANALYSIS

¶ 16    Initially, we note that, because the Nguyens' motion for leave to file an amended pleading was a "motion directed against the judgment" under Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017), we have jurisdiction in this case. The court entered the final judgment in June 2018 and the Nguyens did not file a notice of appeal until November 2018, so, under Rule 303(a)(1), their appeal could be timely only if they filed a qualifying postjudgment motion. "The filing of a notice of appeal is jurisdictional and must be filed within 30 days of final judgment or within 30 days after an order is entered disposing of the last pending postjudgment motion directed against that judgment or order," with a postjudgment motion being a motion that "requests a rehearing, retrial, modification or vacation of the judgment." (Internal quotation marks omitted.) *Heartland Bank & Trust Co. v. The Leiter Group*, 2014 IL App (3d) 130498, ¶ 13. The Nguyens' motion effectively sought to modify the judgment to make it without prejudice. Thus, it was a qualifying postjudgment motion that extended the Nguyens' time to file a notice of appeal.

¶ 17    Turning to the merits of this appeal, the core of the Nguyens' argument is that Wells Fargo's service on them was improper because Wells Fargo should have known that they lived at the Grand Blanc address. They further argue that the court abused its discretion when it denied their motion to file a second amended petition. They argue, among other things, that the court should have allowed their amendment so that they could conform the pleadings to the proofs. The Nguyens also argue that our decision in *Bank of America v. Casey & Carroll Custom Homes*, 2018 IL App (2d) 170582-U, established new law that justified allowing them to amend their petition. Our analysis does not require us to address that argument.

¶ 18    Wells Fargo contends that the court could not properly grant the motion to allow the Nguyens to file their second amended petition. First, citing *Tomm's Redemption, Inc. v. Hamer*,

2014 IL App (1st) 131005, ¶¶ 12-14, it asserts that, once a judgment is final, a court may permit amendments only to conform the pleadings to the proofs. It argues that because "the petition was dismissed at the pleading stage *** there was no trial or evidentiary hearing in this case" and that, "[a]ccordingly, there were no 'proofs' to which [the Nguyens'] petition could be conformed." Second, it argues that the proposed amendment would be futile because the court already found that it had been unable to locate the Nguyens' residence.

¶ 19    We hold that, because failed service would mean that the court lacked personal jurisdiction of the Nguyens, thus rendering the foreclosure judgment void as to their interests, the trial court should have allowed the amendment. In other words, it should have allowed the Nguyens to withdraw their former counsel's decision to stand on the pleadings and addressed the merits of the Nguyens' reformulated voidness claim. We start by explaining why we disagree with both bases on which Wells Fargo claims that the court should not have allowed the amendment. We then explain why the court should have granted the motion.

¶ 20    First, contrary to what Wells Fargo contends and to what *Tomm's Redemption* appears to hold, a court may properly modify a dismissal with prejudice to make it a dismissal without prejudice. In *Tomm's Redemption*, the court dismissed a complaint with prejudice and then denied the plaintiff's motion for leave to amend. In affirming on appeal, the *Tomm's Redemption* court held that, "[f]ollowing judgment, a complaint may *only* be amended in order to conform the pleadings to the proofs." (Emphasis added.) *Tomm's Redemption*, 2014 IL App (1st) 131005, ¶ 14. In support of this, it cited section 2-616(c) of the Code (735 ILCS 5/2-616(c) (West 2010)). *Tomm's Redemption*, 2014 IL App (1st) 131005, ¶ 14. We do not agree with the implication of *Tomm's Redemption* that section 2-616(c) bars a court from vacating a dismissal with prejudice to allow amended pleadings. First, section 2-616(c) does not require that result. Section 2-616(a) of

the Code (735 ILCS 5/2-616(a) (West 2016)) provides, "[a]t any time, before final judgment amendments may be allowed on just and reasonable terms, *** changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, *** which may enable the plaintiff to sustain the claim for which it was intended to be brought." Section 2-616(c) provides that a "pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs." 735 ILCS 5/2-616(c) (West 2016). The section does not address a court's ability to vacate a dismissal with prejudice to permit further pleadings. That power falls within section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 2016)), which provides that a court "may on motion filed within 30 days after entry thereof set aside *any* final order or judgment upon any terms and conditions that shall be reasonable." (Emphasis added.) We may not read that section to give a court the power to modify any judgement except to the extent that the judgment makes a dismissal with prejudice. See *Village of Sleepy Hollow v. Pulte Home Corp.*, 336 Ill. App. 3d 506, 511 (2003) (we may not read limitations into statutes). Furthermore, such modifications have not typically been a matter of controversy. See, *e.g.*, *Ruklick v. Julius Schmid, Inc.*, 169 Ill. App. 3d 1098, 1112-13 (1988) ("[T]he trial court would have abused its discretion in denying plaintiffs' motion to vacate the dismissal with prejudice and to allow filing of their amended complaint."). To be sure, we agree with Wells Fargo that, because the proceedings were at the pleading stage, no "proofs" existed to which the Nguyens could conform their pleadings. However, the Nguyens' description of their motion's purpose was misleading. In substance (as well as title), the motion was simply asking the court to make the dismissal without prejudice to allow them to file an amended petition. The absence of proofs is thus not relevant.

¶ 21    Second, we do not agree with Wells Fargo that the proposed amendment would necessarily be futile based on the court's reasoning in granting the motion to dismiss. The court never

specifically addressed whether the Michigan process server's affidavit was sufficient to establish that the Nguyens lived at the Grand Blanc address. Rather, it ruled that, by claiming that Wells Fargo's search for the Nguyens was inadequate, the Nguyens' petition implicitly conceded that Wells Fargo had not found the Nguyens' residence. The court did not consider the merits of the Nguyens' proposed new claim.

¶ 22    Having addressed why Wells Fargo's arguments fail, we now explain why the court should have granted the motion for leave to amend. Our analysis recognizes that, had the Nguyens had a different sort of claim, the court would almost certainly have acted within its discretion by denying leave to amend in similar circumstances. We explain why a voidness claim requires a different treatment and why the Nguyens' claim was potentially meritorious.

¶ 23    Two standards are relevant to whether a court should vacate a dismissal with prejudice to allow a party leave to amend the initial pleading. The first is the general standard for when a court should allow a party to amend a pleading. The second is the standard for vacating a final judgment. "The relevant factors considered in determining whether to grant leave to amend a pleading are: '(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified.' " *Hiatt v. Illinois Tool Works*, 2018 IL App (2d) 170554, ¶ 37 (quoting *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992)). However, the standard does not necessarily require the presence of all four factors for it to be proper for the court to allow the party to amend. *Hiatt*, 2018 IL App (2d) 170554, ¶ 38. Most cases that state the standard for vacating a final judgment under section 2-1301(e) concern vacatur of default judgments. That standard guides us here; the Nguyens seek to undo a judgment entered due to their own inaction—

their initial decision not to amend their first amended petition—so the circumstances are comparable. When a party seeks to vacate a default judgment under 2-1301(e), "the overriding consideration is simply whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits." *In re Haley D.,* 2011 IL 110886, ¶ 57. "Whether substantial justice is being achieved by vacating a judgment or order is not subject to precise definition, but relevant considerations include diligence or the lack thereof, the existence of a meritorious defense, the severity of the penalty resulting from the order or judgment, and the relative hardships on the parties from granting or denying vacatur." *Jackson v. Bailey,* 384 Ill. App. 3d 546, 549 (2008). Further, when a party makes such a motion, he or she is "generally bound by the negligence of his legal counsel" that caused the judgment, although "a court may refuse to impute such negligence to the client *** when mitigating circumstances are present." *Ameritech Publications of Illinois, Inc. v. Hadyeh*, 362 Ill. App. 3d 56, 60 (2005). Courts' rulings on motions for leave to amend are reviewed for an abuse of discretion (*Hiatt*, 2018 IL App (2d) 170554, ¶ 38); rulings on motions under section 2-1301(e) should not be reversed "absent an abuse of discretion or a denial of substantial justice" (*Jackson*, 384 Ill. App. 3d at 548).

¶ 24    Applying these standards, the point that weighs most in favor of allowing the amendment is that it would cure the defect identified in the prior complaint. The parties appear to agree that, if Wells Fargo can be charged with knowing that the Grand Blanc address was the Nguyens' usual place of residence, proper service required that they receive notice at that address. Our case law suggests that evidence equivalent to that available to Wells Fargo is sufficient to establish that an address is a person's usual place of residence for purposes of abode service. In *Sterne v. Forrest*, 145 Ill. App. 3d 268, 276-77 (1986), we held that, where the plaintiff showed in an evidentiary

hearing that the defendant, *inter alia*, gave a Bartlett address to the Internal Revenue Service as his residential address, had utilities in his name at that address, and used that address for his driver's license and bank account, that address was a proper place for abode service on him despite testimony that he rented the residence to others. Here, the process server naturally enough could not obtain the same kind of detailed information that was elicited at the evidentiary hearing in *Sterne*, but the evidence she did obtain was similar: the Nguyens had a car registered at the Grand Blanc address, and the apartment manager confirmed that they lived there, as did neighbors and the postal service. Short of obtaining in-person service on one of the Nguyens, it is not clear how much more evidence of residence a process server could be expected to collect. Thus, at least on the face of it, it appears that the proposed amendment would cure the defective pleading.

¶ 25    The point that weighs most strongly against allowing the amendment is that the Nguyens' former counsel explicitly waived the opportunity to amend. That fact alone would ordinarily place it within the court's discretion to refuse to vacate the final judgment to allow the amendment. As we noted, a party is generally bound by his or her counsel's acts, even if those are negligent. Moreover, there were no mitigating circumstances of note to justify the court's declining to impute the choice to the party.

¶ 26    However, that the Nguyens raised a plausible voidness claim changes the balance to make the denial of leave to amend an abuse of discretion. Two aspects of Illinois's voidness doctrine act to make this so. First, courts have a special responsibility to vacate void judgments: indeed, they have an independent duty to do so, even *sua sponte*. *People v. Thompson*, 209 Ill. 2d 19, 27 (2004) abrogated on other grounds, *People v. Vara*, 2018 IL 121823. That duty weighs heavily in favor of allowing a plausible voidness claim to be considered on the merits. Second, Illinois's voidness doctrine makes it exceptionally difficult for a voidness claim to be lost to a procedural

default. See *People v. Hubbard*, 2012 IL App (2d) 101158, ¶ 26 ("Illinois voidness doctrine will not allow the forfeiture of a voidness claim."; see also *Thompson*, 209 Ill. 2d at 27 (a voidness claim may be raised at any time). Thus, a voidness claim will generally linger until a court addresses it on its merits. Therefore, even the opposing party is ill-served by a dismissal of such a claim other than on the merits. Although prolongation of the proceedings under the circumstances here might seem unfair to the affected parties, a true resolution of the claim is to their benefit. The court here apparently recognized as much when it gave its reasoning for initially offering the Nguyens an opportunity to file a second amended petition. Counsel for the Nguyens explicitly declined that opportunity, but the Nguyens remained able to raise their voidness claim at any time.[1] Thus the court had no sound basis to deny them leave to do so.

¶ 27                                III. CONCLUSION

¶ 28    For the reasons stated, we reverse the denial of the Nguyens' motion for leave to file an amended petition and remand the matter for further proceedings under section 2-1401.

¶ 29    Reversed and remanded.

---

[1] Indeed, in this appeal, had the Nyguens simply raised their voidness claim instead of arguing for leave to raise it below, we would have been compelled to address it here.