2024 IL App (3d) 230253

Opinion filed April 10, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SANDY S. NGUYEN; PAUL P. NGUYEN; | ) | Appeal from the Circuit Court |
| STATE FARM BANK, FSB; MORTGAGE | ) | of the 18th Judicial Circuit, |
| ELECTRONIC REGISTRATION SYSTEMS, | ) | Du Page County, Illinois, |
| INC., as Nominee for Corinthian Mortgage | ) | |
| Corp., d/b/a Southbanc Mortgage; FIA CARD | ) | |
| SERVICES, N.A., f/k/a Bank of America, N.A., | ) | |
| (USA); CHASE BANK USA, N.A., f/k/a | ) | |
| Chase Manhattan Bank USA, N.A., f/k/a | ) | |
| Bank One Delaware, N.A.; UNKNOWN HEIRS | ) | |
| AND LEGATEES OF SANDY S. NGUYEN, | ) | Appeal No. 3-23-0253 |
| IF ANY; UNKNOWN HEIRS AND | ) | Circuit No. 09-CH-2569 |
| LEGATEES OF PAUL P. NGUYEN, IF ANY; | ) | |
| and UNKNOWN OWNERS AND | ) | |
| NONRECORD CLAIMANTS, | ) | |
| | ) | |
| Defendants. | ) | Honorable |
| | ) | Bryan S. Chapman, |
| (Samuel Sweet, in His Official Capacity as | ) | Judge, Presiding. |
| Chapter 7 Trustee of the Bankruptcy Estate of | ) | |
| Sandy S. Nguyen and Paul P. Nguyen, | ) | |
| Petitioner-Appellant; Wells Fargo Bank, N.A., | ) | |
| Respondent-Appellee). | ) | |

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Justices Hettel and Albrecht concurred in the judgment and opinion.

**OPINION**

¶ 1		Sandy and Paul Nguyen (debtors) were the mortgagors on a residential mortgage for the property located at 52 Jacobsen Avenue, Glendale Heights, Illinois. Wells Fargo Bank (Wells Fargo) was the mortgagee. In 2009, after the debtors failed to make timely payments, Wells Fargo filed a foreclosure complaint, alleging that the debtors defaulted on their loan. After several unsuccessful attempts at personal service, the debtors were served via publication. The debtors did not participate in the proceedings, and the property was sold to Wells Fargo in a judicial sale. The debtors were assessed a $50,000 deficiency balance. In 2010, Wells Fargo sold the property to Ross and Ryan Tinson.

¶ 2		One day after the deed was conveyed to the Tinsons, the debtors filed for Chapter 7 bankruptcy, and Samuel Sweet was appointed as the trustee of the bankruptcy estate. Their filing indicated that they did not own any interest in any real estate, and they disclosed the deficiency balance associated with the property as a liability. They obtained a discharge in bankruptcy shortly thereafter.

¶ 3		In 2017, the debtors filed a petition to quash service of process of the foreclosure complaint and summons pursuant to section 2-1401(f) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(f) (West 2016)), arguing that Wells Fargo's service by publication was improper and, therefore, the court lacked personal jurisdiction over them (sufficiency of service claim). The court dismissed the debtors' petition and denied their motion for leave to amend, and the debtors appealed. The Second District reversed the court's ruling and remanded the case (see *Wells Fargo Bank, N.A. v. Nguyen*, 2019 IL App (2d) 180965-U, ¶ 29), and the debtors filed an amended petition. In the meantime, the property was sold to the current owners, Patrice and Billy Frias. In response to the amended petition, Wells Fargo filed a motion to dismiss, arguing, in part, that the

2

claim was barred by *laches* and judicial estoppel and that all necessary parties were not named as respondents in the petition.

¶ 4 Thereafter, debtors reopened their bankruptcy case to amend their schedules to reflect their claimed interest in the property. Sweet was reappointed as trustee of the bankruptcy estate and was substituted into the debtors' place in the prosecution of their sufficiency of service claim. The court again dismissed the petition, in relevant part, based on *laches*. Sweet appealed, and the Second District reversed and remanded, holding that the Friases were necessary parties to the action but had not been named as respondents. Therefore, the court's dismissal order was vacated and the case remanded. See *Wells Fargo Bank, N.A. v. Nguyen*, No. 2-21-0034 (2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 5 Sweet filed another amended petition to quash service, adding the Friases as respondents. Wells Fargo filed a motion to dismiss, again arguing in relevant part that the claim was barred by *laches*. The court granted Wells Fargo's motion to dismiss on this basis, and this appeal followed. For the reasons set forth below, we affirm the trial court's judgment.

¶ 6                                    I. BACKGROUND

¶ 7 This is the third appeal in this case. In February 2004, the debtors obtained a mortgage loan from Washington National Bank to purchase the property and executed a promissory note to repay the loan in the amount of $192,000 plus interest. The note set forth monthly payments due on the first of each month and indicated that the failure to submit timely payments would result in default. The mortgage and note were later transferred to Wells Fargo. On July 7, 2009, Wells Fargo filed a foreclosure complaint against the debtors, alleging that they had not submitted mortgage payments since January 2009 and were in default.

¶ 8        A special process server attempted to serve the debtors at the property for the first time on July 9, 2009, but was unsuccessful, noting that the property was vacant, the utilities were off, garbage was strewn throughout the house, and there was a violation notice from the Village of Glendale Heights regarding the lawn posted on the door. Further investigation into the debtors' whereabouts revealed various potential addresses in both Illinois and Michigan. After 22 attempts, personal service was ultimately unsuccessful, and the debtors were served via publication. The debtors did not file a response to the complaint or otherwise participate in the foreclosure proceedings. The parties disagree as to whether the service by publication was proper, although this is not the dispositive issue on appeal.

¶ 9        On November 3, 2009, the court entered a default order and judgment for foreclosure and sale against the debtors. On January 12, 2010, the property was sold to Wells Fargo in a judicial sale. On February 9, 2010, the court entered an order approving the foreclosure report of sale and distribution and an order for possession and deed. The debtors were assessed a $50,000 deficiency balance in connection with the mortgage.

¶ 10        The property was conveyed via special warranty deed to the Tinsons on May 5, 2010. The deed was recorded on June 23, 2010. The Tinsons obtained a mortgage on the property.

¶ 11        On May 6, 2010, the debtors filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan. Sweet was appointed as the trustee of the bankruptcy estate. As part of their filing, the debtors completed various schedules disclosing their assets and liabilities. On "Schedule A - Real Property," they did not disclose or otherwise claim any interest in the property (or any other real estate). On "Schedule F - Creditors Holding Unsecured Nonpriority Claims," they disclosed a deficiency balance of $50,000 for the property and listed

4

"Wells Fargo Home Mortgage" as the creditor, along with the property address. The debtors obtained a discharge in bankruptcy on August 18, 2010.

¶ 12    On May 4, 2017, debtors filed a petition to quash service in the foreclosure action, arguing that there were certain deficiencies in the service by publication process, including that the affidavit for service by publication failed to show that their place of residence could not be ascertained, the file lacked any evidence that the clerk mailed the publication to the debtors, and Wells Fargo was required to strictly comply with the statute for service by publication. 735 ILCS 5/2-206(a) (West 2008). Debtors argued that the court lacked personal jurisdiction and, thus, all orders should be vacated. The debtors named Wells Fargo, PennyMac Loan Services (PennyMac) (the Tinsons' mortgage lender), and the Tinsons as respondents.

¶ 13    In response, PennyMac filed a motion to dismiss the debtors' petition, arguing that service by publication was proper, the *bona fide* purchasers and lenders were protected from the claim pursuant to section 2-1401(f) of the Code (735 ILCS 5/2-1401(f) (West 2016)), the debtors' petition was moot, and the claim was barred by *laches*.

¶ 14    On December 8, 2017, the debtors filed an amended petition to quash service, revised to name only Wells Fargo as the respondent and narrow the scope of relief sought to solely quashing service of process. PennyMac then filed a petition to intervene, which was granted. On January 16, 2018, PennyMac filed another motion to dismiss the debtors' amended petition, arguing that the service by publication was proper and that the debtors could not divest PennyMac of its interest in the property. On April 2, 2018, Wells Fargo joined in PennyMac's motion to dismiss as it pertained to the effectiveness of the service by publication.

¶ 15    On June 27, 2018, the court dismissed the debtors' amended petition, finding that the service by publication was proper. On July 20, 2018, the debtors filed a motion for leave to file a

5

second amended petition, which the court denied. The debtors appealed the court's decision, and the Second District reversed and remanded, holding that the voidness claim that the debtors sought to raise in their second amended petition could be raised any time. *Nguyen*, 2019 IL App (2d) 180965-U, ¶ 26.

¶ 16     On April 30, 2019, the property was sold in an unrelated judicial sale to the Friases. An order approving the sale was entered on May 20, 2019. PennyMac was subsequently dismissed from the instant case due to lack of interest, as it was outbid at the judicial sale and paid in full.

¶ 17     On February 21, 2020, the debtors filed their second amended petition to quash service. On April 16, 2020, Wells Fargo filed a motion to dismiss, arguing that the claim was barred by judicial estoppel and *laches*, the petition failed to include all necessary parties (those with an interest in the property), service by publication was proper, and the debtors lacked standing to assert the sufficiency of service claim because the claim was an asset belonging to the bankruptcy estate. The judicial estoppel argument was based upon inconsistent positions by the debtors, who claimed no interest in the property during the bankruptcy proceedings but asserted a right in the property in the instant case. In response, the debtors filed a motion to stay the case in order to file a motion before the bankruptcy court to reopen their case and correct the schedules therein to disclose their interest in the property. The motion was granted.

¶ 18     On July 13, 2020, the debtors filed a motion to reinstate their case in the United States Bankruptcy Court for the Eastern District of Michigan, which was granted. Sweet was reappointed as the trustee of the bankruptcy estate. On September 24, 2020, the debtors filed a motion in the trial court to substitute Sweet in their place for the prosecution of their petition to quash service, suggesting that the substitution would "likely [ ] moot or supersede some if not all of Wells Fargo's arguments." The motion for substitution was granted.

¶ 19　　　　　On November 18, 2020, Wells Fargo's motion to dismiss the second amended petition to quash service was granted with prejudice on the bases of judicial estoppel and *laches*. Regarding judicial estoppel, the court reasoned that the policy underlying judicial estoppel, to prevent fraud, would be subverted by allowing the debtors to reopen their bankruptcy case to disclose a previously concealed asset in order to defend the foreclosure action "many, many years after the fact." As to *laches*, the court stated, in relevant part,

> " *** The Court finds that laches pursuant to the Second District Appellate Court's recent cases of Kusmierz, Altamirano, that an eight-year delay in bringing this 1401 petition is textbook laches. The bank is clearly prejudiced.
>
> And just like juries that are asked to decide certain matters, they're not required to leave their common sense at the front door of the courthouse when they decide—when they come in here for jury duty. Similarly, the Court is not required to do that either.
>
> *** And we were waiting on the Second District to decide whether laches applies in 1401 petitions due to the fact that 1401s can be brought in perpetuity, and they ruled that laches does in fact apply.
>
> This is textbook laches. And if for some unknown reason, the [debtors] didn't know they lost their home, at some point relatively close to the judicial sale, then one would think that an affidavit earning to that—to the date or the approximate time they learned of the foreclosure proceeding, it's a tacit admission by it not being there. They knew about it and it would be silly to believe otherwise, especially given nothing, no affidavit indicating, hey, I didn't know about it for six years or seven years or four years or three years. So laches applies."

7

¶ 20      Sweet then filed a motion for reconsideration, asserting that he was unaware of the debtors' sufficiency of service claim until his reappointment as trustee in 2020. The court agreed with Sweet that judicial estoppel should not apply but maintained that *laches* nonetheless barred the claim. Therefore, the motion for reconsideration was granted in part, but the dismissal with prejudice stood on the basis of *laches*. Sweet appealed, and the Second District reversed and remanded, holding that the Friases, as the current owners of the property, were necessary parties and should have been named in the second amended petition. Because they were not, the Second District vacated the dismissal order without addressing the merits of the *laches* ruling. See *Nguyen*, No. 2-21-0034 (2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 21      On December 14, 2022, Sweet filed a third amended petition to quash service, this time adding the Friases as respondents. Wells Fargo filed another motion to dismiss, maintaining that the petition was barred by *laches* and judicial estoppel, that the service by publication was proper, and, in the alternative, that the case should be transferred to the bankruptcy court. As to the *laches* argument, Sweet responded that the case presented an issue of first impression. He argued that no authority existed to determine whether the debtors' delay in informing him of their interest in the property and sufficiency of service claim until 2020 was attributable to him as trustee for the purposes of *laches*. He argued that their delay should not be imputed to him, as he swiftly acted on the sufficiency of service claim within days of learning of the same. As such, *laches* would not bar his claim as trustee, even if it would bar the claim when brought by the debtors.

¶ 22      In support, Sweet cited judicial estoppel cases that held it inequitable to apply judicial estoppel to the detriment of creditors where debtors had concealed later-discovered assets. He analogized that creditors should not similarly suffer by the application of *laches* because of the debtors' delay, though he did not provide examples of how the bankruptcy creditors would suffer.

Wells Fargo replied that those cases were inapposite because Sweet did not assume the prosecution of the sufficiency of service claim to protect the creditors; rather, it was an effort to "restart the clock on the [debtors'] belated attack on a 2010 judgment." Wells Fargo further argued that Sweet *was* aware of the foreclosure proceedings in 2010, as the deficiency balance resulting therefrom was listed on schedule F of the bankruptcy documents that Sweet would have reviewed prior to the discharge in bankruptcy.

¶ 23    On May 2, 2023, the court entered an order granting Wells Fargo's motion to dismiss Sweet's third amended petition based on *laches*, again citing *PNC Bank, National Ass'n v. Kusmierz*, 2022 IL 126606. The court further found that the substitution of Sweet for the prosecution of the sufficiency of service claim did not change the result, as "a trustee steps into the shoes of a debtor and any defenses to which a debtor is subject apply equally to the trustee." The court agreed with Wells Fargo that the judicial estoppel cases cited by Sweet were inapposite as applied to the *laches* argument. The court denied the motion to dismiss with respect to judicial estoppel, finding that, "while laches applies to the claim regardless of who brings it, judicial estoppel applies to the party bringing the claim."

¶ 24    Sweet timely appealed.

¶ 25                                II. ANALYSIS

¶ 26    On appeal, Sweet argues that the debtors' seven-year delay in asserting their sufficiency of service should not be attributed to him and, thus, *laches* should not bar his claim. In support, he contends that he did not learn of the potential claim until 2020, when the debtors informed him of the same after his reappointment. He alleges that he asserted the claim on behalf of the bankruptcy estate within days of learning of it. Wells Fargo counters that Sweet's substitution into the case does not alter the applicability of *laches*, as he stepped into the debtors' shoes when he was

9

appointed as trustee and was subject to all defenses that could have been asserted against the debtors had they brought the claim themselves. For the reasons that follow, we affirm the trial court's judgment.

¶ 27     We review a trial court's dismissal based upon *laches* for an abuse of discretion, as it is a fact-specific inquiry that lies within the sound discretion of the trial court. See *Marshall v. Metropolitan Water Reclamation District Retirement Fund*, 298 Ill. App. 3d 66, 74 (1998). We may affirm the trial court's judgment for any reason supported by the record, regardless of the rationale employed by the trial court in reaching its decision. *Akemann v. Quinn*, 2014 IL App (4th) 130867, ¶ 21.

¶ 28     Initially, we note that, while the trial court focused on the debtors' seven-year delay in filing their section 2-1401 sufficiency of service claim, the proper time frame for analyzing the *laches* question vis-à-vis Sweet is the date of the filing of the bankruptcy petition. Section 541(a)(1) of the Bankruptcy Code (11 U.S.C. § 541(a)(1) (2006)) provides that the debtors' bankruptcy estate includes "all legal or equitable interests of the debtor in property *as of the commencement of the case*." (Emphasis added.) This language also captures as part of the bankruptcy estate "any causes of action the debtor may bring." *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149 (11th Cir. 2006). Commencement of the proceedings under section 541(a) has been described as allowing the trustee "to succeed to certain property interests possessed by the debtor *at the time of the filing of his bankruptcy petition*." (Emphasis added.) *McAllester, III v. Aldridge (In re Anderson)*, 30 B.R. 995, 1009 (Bankr. M.D. Tenn. 1983). In other words, "commencement" is generally understood to mean the initial filing of the case. Here, the bankruptcy petition was filed in May 2010, which would be the operative

date for purposes of section 541(a). The debtors did not file a new bankruptcy petition in 2020; rather, they filed a motion merely seeking to reopen the case to amend the schedules.

¶ 29    When a bankruptcy trustee is appointed, the trustee stands in the shoes of the debtor and assumes the debtor's rights *as they existed at the commencement of the bankruptcy proceedings.* *Edwards*, 437 F.3d at 1150. Consequently, if a defense can be raised against a potential claim by the debtor at the commencement of the bankruptcy case, that defense can likewise be asserted against the trustee if the trustee brings the claim on behalf of the bankruptcy estate. *Id.*; see *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 596 (7th Cir. 2012). Simply put, the trustee does not inherit "rights and interests *greater* than those of the debtor." (Emphasis in original.) *Edwards*, 437 F.3d at 1150.

¶ 30    Accordingly, we consider whether the sufficiency of service claim existed at the commencement of the debtors' bankruptcy proceeding and, if so, whether *laches* could have been raised as a defense against them at that time. If so, Sweet inherited the sufficiency of service claim, as well as any possible defenses thereto, upon his initial appointment. We discuss each point in turn.

¶ 31    Initially, we note that the debtors' sufficiency of service claim existed at the commencement of their bankruptcy case, as contemplated by section 541(a). The foreclosure proceedings began on July 7, 2009, and the order approving the judicial sale was entered on February 19, 2010. Any claim related to service arose between those dates, and the debtors did not file for bankruptcy until May 6, 2010. As such, the debtors' sufficiency of service claim existed at the commencement of the bankruptcy case, and thus Sweet had the right to bring forth the claim at his initial appointment.

¶ 32    Next, we consider whether *laches* could have been raised against the debtors at the time they filed their bankruptcy petition. *Laches* "is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party." *Tully v. State*, 143 Ill. 2d 425, 432 (1991). To successfully assert *laches*, it must be shown "that a party unreasonably delayed asserting a known right and that delay unduly prejudiced the opposing party." *Renth v. Krausz*, 219 Ill. App. 3d 120, 121-22 (1991). If *laches* applied to preclude the debtors' sufficiency of service claim at the time they commenced their bankruptcy, Sweet is similarly precluded from asserting the claim. See *Reid v. Wolf (In re Wolf)*, 595 B.R. 735, 757 (Bankr. N.D. Ill. 2018) ("The trustee's rights under section 541(a)(1) are by definition no greater than the debtor's; thus, for instance, the trustee cannot succeed on a section 541(a)(1) cause of action where the debtor would necessarily have failed.").

¶ 33    Of course, a *laches* defense only applies if the debtors possessed a known right, which is measured by determining when a party knew or should have known of their right to bring a cause of action. *Renth*, 219 Ill. App. 3d at 122. A party need not possess actual knowledge of the specific facts giving rise to his cause of action; "[i]f the circumstances are such that a reasonable person would make inquiry concerning these facts, a party will be charged with laches if he fails to ascertain the truth through readily available channels." *Bobin v. Tauber*, 45 Ill. App. 3d 831, 837 (1976). "When a right to sue is based upon a statute or a public record, Illinois courts have charged a party with constructive knowledge, because 'ignorance of the law or legal rights will not excuse delay in bringing suit.' " *Renth*, 219 Ill. App. 3d at 122 (quoting *Pyle v. Ferrell*, 12 Ill. 2d 547, 555 (1958), citing *LeGout v. LeVieux*, 338 Ill. 46 (1929)). Thus, we consider not only what the debtors actually knew but also what they could have known "by the use of the means of information within [their] reach with the vigilance the law requires of [them]." *Pyle*, 12 Ill. 2d at 554.

12

¶ 34    The record here demonstrates conclusively that the debtors had actual knowledge of the foreclosure proceedings prior to filing their bankruptcy petition. The debtors filed for bankruptcy on May 6, 2010, and did not disclose as an asset *any* interest in real estate, raising the reasonable inference that they were aware of the foreclosure and sale of the property. More significantly, on schedule F of their bankruptcy filing, the debtors listed the "Wells Fargo Home Mortgage" deficiency balance of $50,000, along with the property address, reflecting their liabilities. Clearly, if they knew the deficiency amount they were subject to after the foreclosure sale, they knew about the foreclosure judgment.

¶ 35    By extension, then, the debtors knew that they were never personally served with the complaint and summons prior to filing their bankruptcy petition. A reasonable person would make inquiry concerning these facts and explore whether insufficient service might defeat the foreclosure action. *Bobin*, 45 Ill. App. 3d at 837 (*laches* applies if a party fails to ascertain the truth through readily available channels). Further, "[w]hen a right to sue is based upon a statute or a public record, Illinois courts have charged a party with constructive knowledge, because 'ignorance of the law or legal rights will not excuse delay in bringing suit.' " *Renth*, 219 Ill. App. 3d at 122 (quoting *Pyle*, 12 Ill. 2d at 555, citing *LeGout*, 338 Ill. 46). As correctly noted by the trial court, the debtors knew they lost their home, "and it would be silly to believe otherwise." Nonetheless, they proceeded with their bankruptcy, accepting that they had no interest in the property when they declined to disclose the asset and included the related deficiency judgment in their schedule F.

¶ 36    While we have determined that the debtors had actual knowledge of their sufficiency of service claim, they can also be charged with constructive notice. The debtors agreed to and executed a 15-year mortgage on the property, and the corresponding promissory note indicated

that their payments were due on the first of each month and that they would be in default if they failed to make timely payments. They stopped paying the mortgage in January 2009, and as of July 2009, the property was vacant, the utilities were off, and garbage was strewn throughout the home. All signs pointed to the debtors having abandoned the property. By the terms of the mortgage and note, the debtors knew that neglecting to make payments would result in their default. Knowing that defaulting on a loan would eventually result in consequences, a reasonable person would have inquired as to the status of the property. Public records concerning the foreclosure proceedings were readily available to the debtors. Had they made such an inquiry, they would have discovered the foreclosure proceedings, as well as their sufficiency of service claim. See *Pyle*, 12 Ill. 2d at 554-55; *Bobin*, 45 Ill. App. 3d at 837. Thus, the debtors also had constructive notice of the foreclosure proceedings and their potential sufficiency of service claim. Indeed, despite filing four separate petitions to quash service, the debtors never claimed, via affidavit or otherwise, that they were unaware of the foreclosure proceedings.

¶ 37    As explained above, Sweet is charged with the debtors' actual and constructive knowledge of their sufficiency of service claim at the time of his original appointment, having stepped into their shoes and circumstances as of the date of the bankruptcy filing. *Supra* ¶ 29. Parenthetically, though not factoring into our analysis, we also observe that Sweet could have learned of the foreclosure proceedings during his original appointment in 2010. In his role as trustee, he would have reviewed the debtors' schedule F filing that disclosed "Wells Fargo Home Mortgage" as a creditor in relation to the deficiency balance owed on the property. No ambiguity existed as to the nature of the deficiency balance, as the property's address was listed alongside the sum due on schedule F. If Sweet had any questions or concerns related to the foreclosure, he had a duty

14

pursuant to section 704(a)(4) of the Bankruptcy Code (11 U.S.C. § 704(a)(4) (2006)) to further investigate the debtors' financial affairs.

¶ 38　　As to whether the debtors unreasonably delayed asserting their known right, we recognize that only six months passed between the entry of the judgment for foreclosure and the debtors' bankruptcy filing. However, "*laches* concerns more than the mere passage of time." *Kusmierz*, 2022 IL 126606, ¶ 25. *Laches* is "principally a question of the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relation of the property and parties, and where there is such a change as to make it inequitable to grant relief, it will be refused." *Pyle*, 12 Ill. 2d at 552. Indeed, in the case of serious prejudice, *laches* has been utilized to preclude a claim even prior to the expiration of its statute of limitations. *Renth*, 219 Ill. App. 3d at 122. As discussed in more detail below, when the debtors' delay in asserting their sufficiency of service claim is viewed through the lens of prejudice, even if considered only as of the time they filed for bankruptcy, it is clear that the delay was unreasonable. See *id.* at 123 ("The question of delay, therefore, is enmeshed in the question of prejudice ***.").

¶ 39　　Prejudice is established where a party " 'incurs risk, enters into obligations, or makes expenditures for improvements or taxes' while the other party remains passive." *Kusmierz*, 2022 IL 126606, ¶ 33 (quoting *Pyle*, 12 Ill. 2d at 555).

¶ 40　　The prejudices present in the instant case are substantially similar to those presented in *Kusmierz*. In *Kusmierz*, a bank filed a complaint for foreclosure of a residential mortgage. *Id.* ¶ 3. The process server personally served the property owners three days before being appointed by the court as required by statute. *Id.*; 735 ILCS 5/2-202(a) (West 2016) (requiring the special appointment of private detectives serving process in counties with a population exceeding two million). The property owners did not participate in the foreclosure proceedings, and the property

was sold to the bank. *Kusmierz*, 2022 IL 126606, ¶ 4. The property was subsequently sold to a third party. *Id.* Six years later, the property owners filed a section 2-1401 petition to void the judgment of foreclosure, arguing that the court lacked personal jurisdiction over them due to improper service. *Id.* ¶ 5. The bank and the third party moved to dismiss, arguing that the claim was barred by the doctrine of *laches*. *Id.* ¶ 6.

¶ 41     The trial court granted the motion to dismiss, in relevant part, based on *laches*, and the appellate court affirmed. *Id.* ¶ 7. After holding generally that *laches* could be applied to a petition seeking relief from a void judgment, the supreme court then agreed that *laches* precluded the property owners' claim. *Id.* ¶¶ 27-28. The element of the unreasonable delay in asserting a known right was easily satisfied, as there was no dispute that the property owners received actual notice of the foreclosure proceedings when they were personally served, albeit improperly. *Id.* ¶ 31. The court specifically noted that the property owners did nothing to preserve their rights for more than six years after the property was sold, nor did they offer affidavits to demonstrate that such a delay was reasonable or otherwise explainable. *Id.* As for the element of prejudice, the court found that both the bank and the third-party purchasers of the property were prejudiced by the property owners' delay. *Id.* ¶ 33.

> "[The bank] was prejudiced because the six-year delay increased defendants' damages without detriment to themselves, resulted in [the bank] selling the property to *bona fide* purchasers, and prevented [the bank] from being able to recover the property used to secure defendants' loan. With respect to third-party [purchasers], they purchased the property for value and expended considerable sums building a home on the property and paying taxes and insurance. Thus, we find that the record supports a finding of prejudice as to both [the bank] and third-party [purchasers]." *Id.*

16

¶ 42　　　　Here, as of the filing of the bankruptcy petition, the property had already been sold twice—to Wells Fargo at the judicial sale and then to *bona fide* purchasers, the Tinsons. The deed to the property was conveyed to the Tinsons one day before the debtors filed for bankruptcy. The unreasonable delay in asserting the sufficiency of service claim resulted in Wells Fargo selling the property to *bona fide* purchasers, preventing it from being able to recover the property used to secure the debtors' mortgage. See *id.* With respect to the Tinsons, they obtained a mortgage to purchase the property for value and were entitled to rely upon unclouded title. Yet, here they have been named as necessary parties in the instant action. The debtors' unreasonable delay in asserting their known rights as it relates to their sufficiency of service claim prejudiced both Wells Fargo and the Tinsons. As in *Kusmierz*, this prejudice warrants the application of *laches* to the debtors' sufficiency of service claim.

¶ 43　　　　Because we have determined that the defense of *laches* precluded the debtors' sufficiency of service claim at the commencement of their bankruptcy proceedings, we do not address the trial court's determination that *laches* applied to the debtors' delay in filing the section 2-1401(f) petition, which it attributed to Sweet as the substitute petitioner. Sweet stepped into the debtors' shoes and inherited any causes of action, as well as any defenses thereto, as they existed at the commencement of the bankruptcy proceedings. *Laches* precludes both Sweet and the debtors from asserting their sufficiency of service claim for the reasons set forth herein. *Akemann*, 2014 IL App (4th) 130867, ¶ 21 (we may affirm on any grounds supported by the record).

¶ 44　　　　Accordingly, we affirm the trial court's judgment.

¶ 45　　　　　　　　　　　　　　III. CONCLUSION

¶ 46　　　　The judgment of the circuit court of Du Page County is affirmed.

¶ 47　　　　Affirmed.

*Wells Fargo Bank, N.A. v. Nguyen*, 2024 IL App (3d) 230253

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 09-CH-2569; the Hon. Bryan S. Chapman, Judge, presiding. |
| **Attorneys for Appellant:** | Adam Goodman, of Goodman Tovrov Hardy & Johnson, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Lucia Nale, Michael H. Bornhorst, and Clare E. Myers, of Mayer Brown LLP, of Chicago, for appellee. |